REVISED - August 3, 1999

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

No. 98-10357
_____

DANETTE HOPE GROS; EDITH D SIKES,

Plaintiffs - Appellants,

v.

THE CITY OF GRAND PRAIRIE, TEXAS, ET AL,

Defendants,

THE CITY OF GRAND PRAIRIE, TEXAS; HARRY L CRUM;
RICHARD L BENDER,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

July 14, 1999

Before KING, Chief Judge, and POLITZ and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

Dannette Hope Gros and Edith D. Sikes appeal from an adverse summary judgment order dismissing their 42 U.S.C. § 1983 claims against the City of Grand Prairie, Texas (the "City"); Harry Crum, the Chief of the City of Grand Prairie Police Department ("GPPD"); and Richard L. Bender, the GPPD's officer in charge of internal affairs (collectively, "Municipal Defendants"). Because we find that the district court applied improper legal standards in its summary judgment order, we vacate and remand for further consideration.

This suit grew out of allegations by Gros and Sikes that

Eric Rogers, a former GPPD officer, physically, sexually, and verbally abused them. Gros contends that during a routine traffic stop in August 1995, Officer Rogers used excessive and improper force against her, including grabbing her breast and placing her in the back of his squad car on a hot day with the windows closed. Sikes asserts that Rogers, while responding to a call in February 1996, sexually abused her by grabbing her breast and placing his hand in her pants. Both Gros and Sikes filed complaints with the GPPD Internal Affairs Department. Sikes also testified before a grand jury which indicted Officer Rogers on charges of "official oppression." Rogers was terminated by the GPPD following an internal investigation.

Gros and Sikes filed a complaint in October 1996 against Officer Rogers and the Municipal Defendants[1] in the United States District Court for the Northern District of Texas. They asserted several causes of action under 42 U.S.C. § 1983 for violations of their Fourth Amendment and Fourteenth Amendment rights. In the only cause of action directed at the City, Gros and Sikes listed forty-one ways in which the City "as a matter of policy, practice and/or custom has acted in reckless, callous and deliberate indifference to [Gros and Sikes's] constitutional rights." They included numerous alleged deficiencies in the hiring, training, and disciplining of police officers in general, and of Officer

[1]The original complaint listed only Rogers and the City of Grand Prairie as defendants. That complaint was amended in July 1997 to include the other Municipal Defendants, Harry Crum and Richard Bender, as additional defendants.

2

Rogers specifically.

In August 1997, the Municipal Defendants filed a motion for summary judgment. Gros and Sikes argued that summary judgment was inappropriate because there was sufficient evidence that "the City of Grand Prairie itself caused the deprivation of [Gros and Sikes's] constitutional rights through policies and customs which were an intentional choice by the final policymaking authority, Chief Crum." On February 23, 1998, District Judge Fitzwater entered an order granting the Municpal Defendants' motion and dismissing all of Gros and Sikes's claims against the City and all of their official-capacity claims against Crum and Bender. The court found that the City was not liable under § 1983 because Gros and Sikes had failed to show that Crum possessed final policymaking authority over the GPPD's policies. The court dismissed the official-capacity claims against Crum and Bender on the same basis. We now consider the timely appeal by Gros and Sikes of that order.

## DISCUSSION

Gros and Sikes contend on appeal that the district court erred in finding that the City of Grand Prairie could not be held liable for Chief Crum's decisions to enact or ratify the GPPD's alleged unconstitutional policies and customs. Under 42 U.S.C. § 1983, a municipality cannot be held vicariously liable for the constitutional torts of its employees or agents. *See Monell v. Department of Social Services*, 436 U.S. 638, 694 (1978). Liability arises only when the execution of an official policy or

custom of the municipality causes the constitutional injury. *See id.* A policy or custom becomes official for purposes of § 1983 when it results from the decision or acquiescence of the municipal officer or body with "final policymaking authority" over the subject matter of the offending policy. *Jett v. Dallas Independent School District*, 491 U.S. 701, 737 (1989). Thus, the City of Grand Prairie could be liable for the decisions of Chief Crum if Crum was the City's final policymaking authority over the areas in which the decisions were made.

In reaching its conclusion that Chief Crum did not have final policymaking authority over the GPPD's hiring, training, or discipline policies, the district court employed two legal principles. First, it found that the ultimate policymaking authority did not reside with Chief Crum because "[a]bsent contrary evidence, the court must assume that policymaking authority resides with the City's governing body." Second, the court stated that Gros and Sikes could nonetheless survive summary judgment if "there is an issue of material fact whether policymaking authority has been delegated to Chief Crum." On the basis of these two legal precepts, and its finding that "a reasonable trier of fact could not find that final policymaking authority has been delegated by the City's governing body to Chief Crum," the district court granted summary judgment to the Municipal Defendants.

Appellants contend that the district court used the wrong legal standards in granting summary judgment. As recognized by

4

the district court in its decision, the Supreme Court has evinced no preference for any single body as the source of municipal policymaking authority. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) (instructing that final policymaking authority "is no more the exclusive province of the legislature at the local level than at the state or national level"). Instead, the Court has remarked that "one may expect to find a rich variety of ways in which the power of [local] government is distributed among a host of different officials and official bodies." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988). The Court has also rejected the need for establishing any default final policymaker, finding that "state law . . . will *always* direct a court to some official or body that has the responsibility for making law or setting policy in any given area of a local government's business." *Id.* at 125 (emphasis added). To the extent that the district court relied upon a presumption concerning the locus of final policymaking authority in the City of Grand Prairie instead of looking to state law as the sole determinant, we find that it erred.

In this regard, we note that there was legal authority available to assist the district court in determining which of the City's officials or bodies possessed final policymaking authority over the GPPD policies. The sources of state law which should be used to discern which municipal officials possess final policymaking authority are "state and local positive law, as well as 'custom or usage' having the force of law." *Jett*, 491 U.S. at

737 (internal quotation omitted). In this case, each of those sources were available. First, Chief Crum's testimony in the record refers repeatedly to the City of Grand Prairie Civil Service Commission. In a Texas municipality with a population between 10,000 and 1.5 million, the creation of a police civil service commission must be approved by the municipality's voters. *See* Tex. Loc. Gov't Code Ann. § 143.002 (1999 Supp.). The commission is then empowered under the Texas Local Government Code to make and review certain decisions regarding the hiring and disciplining of police officers. *See* id. § 143.001 *et seq*. There are thus questions of local and state positive law whether a Grand Prairie Civil Service Commission was adopted by the Grand Prairie voters and whether that commission, instead of the City's governing body or Chief Crum, was the final policymaking authority over the GPPD's hiring or discipline policies. Second, Gros and Sikes submitted to the district court affidavits or depositions of at least five members of the GPPD, including three depositions of Chief Crum. In these depositions, Chief Crum and the other officers were questioned at length concerning the methods by which the GPPD's hiring, training, and discipline policies were created and implemented. Their testimony indicated that Chief Crum, the city manager, and the civil service commission each played a role in the formation of GPPD policy.[2]

_____

[2]Although we are remanding to allow the district court to make the first assessment of these legal sources, we do note our disagreement with the dissent's assertion that Chief Crum's deposition testimony "conclusively negates" the possibility that Crum was the final policymaking authority over any of the GPPD's

Those depositions were available to the district court as potential evidence of municipal customs or usages having the force of state law. It was thus incumbent upon the district court to consider state and local positive law as well as evidence of the City's customs and usages in determining which City officials or bodies had final policymaking authority over the policies at issue in this case.

We also disagree with the district court's assertion that even if Chief Crum did not possess final policymaking authority as a matter of state law, Gros and Sikes could nonetheless survive summary judgment if there was an issue of material fact whether Crum had been delegated final policymaking authority. In *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989), the Supreme Court established that whether an official has been delegated final policymaking authority is a question of law for the judge, not of fact for the jury. *See id.* at 737 ("[T]he

policies. Crum's testimony was, at best, conflicting. He characterized the city manager as his "boss," but also described the chief of police's "overall responsibility" as "setting policy or approving policy in the department." Crum also stated that some of his decisions were subject to review by the city manager or the civil service commission, but then agreed that their review in some areas was no more than a "rubberstamp." The Supreme Court has rejected the principle of a "de facto" policymaker. *See Praprotnik*, 485 U.S. at 131. Nonetheless, absent a contrary regulation or ordinance, a city council's or city manager's continuous refusal to exercise some theoretical authority to review a municipal official's policy decisions will, at some point, establish the municipal official as the final policymaking authority by custom or usage having the force of state law. We leave to the district court's initial determination whether the city manager had any authority to review Chief Crum's decisions and, if so, whether the point was reached where his failure to exercise that authority became a custom or usage.

7

identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge *before* the case is submitted to the jury.")  On remand, this court interpreted that instruction as including, as questions of law for the court, determinations whether final policymaking authority has been delegated.  *See Jett v. Dallas Independent School District*, 7 F.3d 1241, 1248-49 (5th Cir. 1993) (determining that, as a question of law, final policymaking authority had not been delegated from school board to superintendent of schools).  Based upon the Supreme Court's decision in *Jett* and our interpretation of that decision on remand, it was error for the district court to analyze whether Chief Crum had been delegated final policymaking authority as a question of fact for the jury. Instead, the district court should have determined whether any such delegation had occurred as a matter of state law.

CONCLUSION

We vacate the district court's grant of summary judgment based upon our conclusion that the court relied upon erroneous legal standards in determining whether the City of Grand Prairie can be held liable under 42 U.S.C. § 1983 for the alleged constitutional violations of its chief of police, Harry Crum. Because the district court is better suited than this court to make a first determination of whether state law entrusted Chief Crum with the final policymaking authority that could establish the City's § 1983 liability, we remand this case for further

8

proceedings consistent with this decision.  Furthermore, because the record does not reveal that the parties formulated arguments to the district court concerning the sources of state law impacting upon the locus of policymaking authority over the GPPD, the district court should allow them an opportunity to present such arguments on remand.

VACATED and REMANDED.

KING, Chief Judge, dissenting:

Because I am convinced that the district court properly applied the correct legal standards to the facts of this case, I respectfully dissent from the majority's decision to vacate and remand the grant of summary judgment in favor of the City.

Gros and Sikes based their claim for municipal liability on the theory that their injuries were proximately caused by the City's policy of (1) failing to adequately screen, train, supervise, and discipline police officers, including Rogers; (2) failing to adequately investigate complaints against officers, including Rogers; and (3) permitting officers to violate citizens' constitutional rights.  It is well-settled that a local governmental body such as the City of Grand Prairie is liable for damages under § 1983 for constitutional violations resulting from official city policy.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978).  This circuit has defined an

9

official policy for whose execution a local government may be found liable as:

    .    A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

    .    A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.  Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policymaking authority.

Johnson v. Moore, 958 F.2d 92, 94 (5th Cir. 1992) (quoting Bennett v. City of Slidell, 735 F.2d 861, 862 (5th Cir. 1984) (en banc)).  Under this framework, a city is liable only if the policy or practice of which the plaintiffs complain is attributable to an entity with policymaking authority.  See Monell, 436 U.S. at 694.  Whether a particular official has final policymaking authority is a question of state law, and the identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge before the case is submitted to the jury.  See Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989); see also COMMITTEE ON PATTERN JURY INSTRUCTIONS, FIFTH CIRCUIT, PATTERN JURY INSTRUCTIONS (CIVIL CASES), Instruction 10.3, at 120 (1997) ("The [mayor/city council] is an official whose acts constitute final official policy of the City of _____.  Therefore, if you find that the acts of the [mayor/city council]

10

deprived the plaintiff of constitutional rights, the City of

_____ is liable for such deprivations."). Moreover, state law,

which includes valid local ordinances and regulations, will

"always direct a court to some official or body that has the

responsibility for making law or setting policies in any given

area of a local government's business." City of St. Louis v.

Praprotnik, 485 U.S. 112, 125 (1988) (plurality opinion)

(footnote omitted). Consequently, a federal court "would not be

justified in assuming that municipal policymaking authority lies

somewhere other than where the applicable law purports to put

it." Id. at 126.

The district court applied the correct legal standards. The

majority first faults the district court for asserting that

"[a]bsent contrary evidence, the court must assume that

policymaking authority resides with the City's governing body."

At the same time, however, the district court explicitly

recognized that state law will always direct the court to an

official or body responsible for making law or setting policy,

see Praprotnik, 485 U.S. at 125-26. And, although it said that

"[t]o survive summary judgment, Gros and Sikes must establish

that there is an issue of material fact whether policymaking

authority has been delegated to Chief Crum," it also acknowledged

that the identification of a municipal policymaker is a question

of law to be decided by the trial judge, see Jett, 491 U.S. at

737. Contrary to the majority's assertion that the district

11

court "analyze[d] whether Chief Crum had been delegated final policymaking authority as a question of fact for the jury," the district court never suggested that delegation is a question "for the jury." I interpret the district court as simply holding that under Texas law, final policymaking authority rests with the City's governing body and that, on this record, such authority had not been delegated to Chief Crum.

This conclusion that Chief Crum was not the City's policymaking authority with respect to the hiring, training, and disciplining of police officers, the investigation of complaints against officers, and the protection of citizens' constitutional rights is correct. That an official possesses decisionmaking authority does not necessarily mean that he also has policymaking authority. See Jett v. Dallas Indep. Sch. Dist., 7 F.3d 1241, 1246 (5th Cir. 1993). Rather, as we have recognized,

> policymaking authority is more than discretion, and it is far more than the final say-so, as a matter of practice, on what water main will be replaced today and whether a building meets city construction standards. City policymakers not only govern conduct; they decide the goals for a particular city function and devise the means of achieving those goals. Policymakers act in the place of the governing body in the area of their responsibility; they are not supervised except as to the totality of their performance.

Bennett v. City of Slidell, 728 F.2d 762, 769 (5th Cir. 1984) (en banc). Although policymaking authority may be shared, an entity whose decisions are reviewable is not a policymaker whose acts can subject the municipality to liability. See Praprotnik, 485 U.S. at 126 ("Assuming that applicable law does not make the decisions of the Commission reviewable by the Mayor and Aldermen,

12

or vice versa, one would have to conclude that policy decisions made either by the Mayor and Aldermen or by the Commission would be attributable to the city itself.").

Far from showing that he was a policymaker, Chief Crum's deposition testimony conclusively negates that possibility. Chief Crum testified that the city manager, whom he described as his "boss," was the ultimate policymaking authority with respect to officer hiring and grievance procedures, that the city civil service commission could overrule him on matters of officer discipline, and that he was <u>not</u> the final policymaking authority for the City in regard to investigating complaints against officers. Although he stated that he was the final policymaking authority with respect to training officers, he admitted in a deposition in another case, which Gros and Sikes attached as an exhibit to their response to the Municipal Defendants' motion for summary judgment, that the city manager and civil service commission were the ultimate authorities with respect to the policies of the GPPD:

> Q. So with regard to the issuance of the policies that govern and control the Grand Prairie Police Department you are the individual with the responsibility and duty to issue those policies, correct?
>
> A. Not the ultimate, ma'am.
>
> Q. Who is the ultimate, sir?
>
> A. Well, they're subject to review by the city manager; they are subject to review by the Civil Service Commission. I assume that they could be reviewed by the council but that typically to my knowledge has never happened. It could but it never has that I'm aware of.

The following colloquy between Chief Crum and plaintiff's counsel

13

took place at the same deposition:

> Q.  And as far as approving the policies that are in effect at the Grand Prairie Police Department, even after you sign off on a policy does the council still have the authority to negate or disapprove of that policy?
>
> A.  Yes, they do.

Because the summary judgment evidence demonstrates that Chief Crum was not the City's policymaking authority with respect to the GPPD, municipal liability may not be premised upon any policy statement, ordinance, regulation, or decision adopted or promulgated by him or upon a custom of which he had actual or constructive knowledge.  Gros and Sikes point to no other potential policymaker that adopted some policy or knew of a custom that caused them harm.  Accordingly, I would hold that the district court properly granted summary judgment on their § 1983 claims against the City.