# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

_____

## No. 01-10143
_____

DANETTE HOPE GROS; EDITH D. SIKES,

Plaintiffs-Appellants,

versus

CITY OF GRAND PRAIRIE, TEXAS, ET AL.

Defendants,

CITY OF GRAND PRAIRIE, TEXAS; HARRY L. CRUM; RICHARD L. BENDER

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Texas - Dallas Division
(3:96-CV-2897-D)
_____
March 12, 2002

Before JONES, WIENER, and PARKER, Circuit Judges.

PER CURIAM:[*]

Plaintiffs-Appellants Danette Hope Gros and Edith D. Sikes (collectively, "Appellants") appeal from adverse summary judgment orders dismissing their 42 U.S.C. § 1983 claims against the City of Grand Prairie, Texas (the "City") and Harry Crum, the Chief of the

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

City of Grand Prairie Police Department ("GPPD").  We affirm both grants of summary judgment.

## I. Facts and Proceedings

This is our third encounter with these parties related to the same underlying occurrences.   Although the operative facts are recounted fully in the second of our two previous encounters,[1] we provide here the abbreviated version from our first encounter[2]:

> This suit grew out of allegations by Gros and Sikes that Eric Rogers, a former GPPD officer, physically, sexually, and verbally abused them.  Gros contends that during a routine traffic stop in August 1995, Officer Rogers used excessive and improper force against her, including grabbing her breast and placing her in the back of his squad car on a hot day with the windows closed. Sikes asserts that Rogers, while responding to a call in February 1996, sexually abused her by grabbing her breast and placing his hand in her pants.  Both Gros and Sikes filed complaints with the GPPD Internal Affairs Department.  Sikes also testified before a grand jury which indicted Officer Rogers on charges of "official oppression."  Rogers was terminated by the GPPD following an internal investigation.[3]

Gros and Sikes filed their § 1983 claims against the City, Chief Crum, and Lieutenant Bender, the officer in charge of the GPPD's Department of Internal Affairs.  In February 1998, the district court granted the City's motion for summary judgment, holding that  the City was not liable under § 1983 because Gros and

---

[1] Gros v. City of Grand Prairie, Tex., 209 F.3d 431 (5th Cir. 2000).

[2] Gros v. City of Grand Prairie, Tex., 181 F.3d 613 (5th Cir. 1999).

[3] Gros, 181 F.3d at 614.

Sikes had failed to show that Chief Crum possessed final policy-making authority over the GPPD's policy, as would be required if their municipal liability claim were to succeed. At the same time, the district court also dismissed all claims against Chief Crum and Lieutenant Bender in their official capacities.

Appellants appealed the district court's grant of summary judgment to the City, and in July 1999 we vacated that ruling, holding that the court had relied on erroneous legal standards in determining whether the City could be held liable under § 1983 for the alleged constitutional violations of its chief of police. We remanded the case to the district court "to make a first determination of whether state law entrusted Chief Crum with the final policymaking authority that could establish the City's § 1983 liability," and to allow the parties to present arguments "concerning the sources of state law impacting upon the locus of policymaking authority over the GPPD."[4]

In the meantime, back at the district court, Chief Crum and Lieutenant Bender had filed motions for summary judgment based on a defense of qualified immunity for the Appellants' § 1983 claims against them in their supervisory capacities. The district court granted Bender's motion for summary judgment, and Appellants did not appeal that ruling at that time. The district court granted Chief Crum's motion with respect to the claims that he (1)

---

[4] Id. at 617.

maintained an improper hiring policy and (2) improperly trained and supervised Rogers.  The court refused to grant qualified immunity to Chief Crum with respect to his hiring of Rogers, however.

Crum appealed the court's denial of qualified immunity as to the hiring of Rogers, and in April 2000, we reversed that denial and remanded the case, holding that the evidence was insufficient to show that Chief Crum was deliberately indifferent to Appellants' constitutional rights when he made the decision to hire Rogers.[5]

At the same time, Appellants had cross-appealed the district court's grants of qualified immunity to Chief Crum on the hiring policy and training and supervision claims, but they "properly recognize[d]" that "the appeal of summary judgment on these two claims [was] an interlocutory appeal not typically immediately reviewable by this court."[6]  We declined to exercise pendent appellate jurisdiction over the cross-appeal.[7]  Accordingly, Appellants' objections to the grant of qualified immunity to Chief Crum on the hiring policy and training and supervision claims have not yet been reviewed by us.

Finally, the district court turned its attention for the second time to the City's municipal liability.  The district court issued its Memorandum Opinion and Order on the City's renewed

---

[5] Gros, 209 F.3d 431 (5th Cir. 2000).

[6] Id. at 436.

[7] Id. at 437.

4

motion for summary judgment in December 2000, granting the City's motion and once again dismissing the action as to City and as to Chief Crum and Lieutenant Bender in their official capacities. In its ruling, the district court cited U.S. Supreme Court authority for the proposition that a municipality can be held liable only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury,"[8] and noted that the policy or custom must be attributable to a person with policymaking authority. The district court held as a matter of law that Chief Crum did not exercise policymaking authority for the City, "at least in any respect that would permit [plaintiffs] to recover against the City on the claims at issue in this case," and noted that Gros and Sikes had not identified any other potential policymakers through whom the City could be held liable.

Proceeding in the alternative, the court then assumed arguendo that Chief Crum did have policymaking authority and determined that the City would nevertheless not be liable. Referring to its own earlier ruling concerning Chief Crum's qualified immunity on the hiring policy and training and supervision claims, and to our ruling on the claim based on the hiring of Rogers, the district court held that Crum's acts and omissions with regard to GPPD's hiring policy generally, the hiring of Rogers in particular, and

---

[8] Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

the training and supervision of Rogers, did not rise to the level of deliberate indifference required to establish the City's liability. Accordingly, the district court once again dismissed the action as to the City and as to Chief Crum and Lieutenant Bender in their official capacities, and issued a January 2001 order effectuating the same.

Appellants filed a timely notice of appeal of the district court's December 2000 ruling on the City's liability.

## II.  Analysis

A. Standard of Review

We review a grant of summary judgment <u>de</u> <u>novo</u>, applying the same standard as the district court.[9]  A motion for summary judgment is properly granted only if there is no genuine issue as to any material fact.[10]  An issue is material if its resolution could affect the outcome of the action.[11]  In deciding whether a fact issue has been created, we must view the facts and the inferences to be drawn therefrom in the light most favorable to the

---

[9] <u>Morris v. Covan World Wide Moving, Inc.</u>, 144 F.3d 377, 380 (5th Cir. 1998).

[10] Fed.R.Civ.P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

[11] <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

nonmoving party.[12]

The standard for summary judgment mirrors that for judgment as a matter of law.[13] Thus, the court must review all of the evidence in the record to which the parties invite the court's attention,[14] but make no credibility determinations or weigh any evidence.[15] In reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached.[16]

B. Discussion

1. Municipal Liability

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

---

[12] See Olabisiomotosho v. City of Houston, 185 F.3d 521, 525 (5th Cir. 1999).

[13] Celotex Corp., 477 U.S. at 323.

[14] See Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992), cert. denied, 506 U.S. 832 (1992).

[15] Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000).

[16] Id. at 151.

In Board of County Commissioners of Bryan County, Okl. v. Brown ("Brown")[17], the U.S. Supreme Court discussed at length the imposition of § 1983 liability on a municipality. Although a municipality is a "person" for purposes of § 1983, the Court emphasized that the statute imposes liability only on the one who subjects another to the deprivation of guaranteed rights, privileges, or immunities, and that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor."[18] As the Court noted, "[w]e have consistently refused to hold municipalities liable under a theory of respondeat superior."[19]

Instead, "a plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."[20] This requirement "ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality."[21] If the deprivation is alleged to have resulted from a "custom," it must be a custom that is "so widespread as to have the force of law" before § 1983

---

[17] 520 U.S. 397 (1997).

[18] Brown, 520 U.S. at 403.

[19] Id.

[20] Id.

[21] Id. at 403-04.

8

liability may fairly be imposed on the municipality.[22]  In either case, the execution of the government's policy or custom must be attributable to the municipality's "lawmakers or...those whose edicts or acts may fairly be said to represent official policy."[23]

If the plaintiff succeeds in identifying a specific governmental policy or custom and a person with policymaking authority, the plaintiff must next show that the municipality, through its deliberate conduct, was the moving force behind the injury alleged.[24]  At this stage, the U.S. Supreme Court has cautioned us to proceed slowly before imposing municipal liability. As the Court explains, "the conclusion that the <u>action</u> <u>taken</u> or directed by the municipality or its authorized decisionmaker <u>itself</u> <u>violates</u> <u>federal</u> <u>law</u> will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains."[25]  The Court contrasts that situation with one in which the action taken by the alleged policymaker is "<u>itself</u> <u>legal</u>,"[26] such as the <u>hiring</u> of an officer who later uses excessive force. With respect to this latter situation, the Court admonishes:

> Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused

---

[22] <u>Id.</u> at 404.

[23] <u>Monell</u>, 436 U.S. at 694.

[24] See <u>Brown</u>, 520 U.S. at 404.

[25] <u>Id.</u> at 405 (emphasis added).

[26] <u>Id.</u> (emphasis added).

9

an employee to do so, <u>rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee</u>.[27]

To meet these "rigorous standards," plaintiffs like Gros and Sikes who seek to show that a "facially lawful municipal action" has led an employee to violate their rights, "must demonstrate that the municipal action was taken with '<u>deliberate indifference</u>' as to its known or obvious consequences. <u>A showing of simple or even heightened negligence will not suffice</u>."[28]

In the instant case, Appellants contend that the district court erred in failing to find that Chief Crum held policymaking authority sufficient to support their claim that the City was liable for the violation of their constitutional rights.[29] They insist that an individual can be endowed with policymaking authority either through positive law or by "'custom or usage' having the force of law"[30]; that the City showed only that Chief

---

[27] <u>Id.</u> (emphasis added).

[28] <u>Id.</u> at 407 (internal citation omitted) (emphasis added).

[29] The district court observed that "plaintiffs have not identified any...potential policymaker [other than Chief Crum] who participated in the violations of their constitutional rights," and therefore declined to hold the City liable under § 1983 after it concluded that Chief Crum did not exercise policymaking authority. <u>Gros v. City of Grand Prairie, Tex.</u>, 2000 WL 1842421, at *3 (Dec. 12, 2000). We note, similarly, that Appellants have not urged us on appeal to consider anyone but Chief Crum as a potential policymaker, and we have not done so.

[30] <u>Jett v. Dallas Independent School District</u>, 491 U.S. 701, 737 (1989).

Crum was not entrusted with such authority through the <u>positive</u> law; and that they (Appellants) provided "a plethora of evidence demonstrating the custom and usage of the City as having reposited the pertinent policymaking authority with Chief Crum." They argue with particular urgency that the district court erred when it failed to find that Chief Crum exercised policymaking authority over the training of GPPD officers.

As a preliminary matter, we take issue with the Appellants' contention that the district court failed to consider their proffered evidence showing that Chief Crum had been delegated policymaking authority through custom or usage. That court's thoughtful opinion demonstrates beyond cavil that it did consider their evidence. It simply found that evidence lacking:

> Although state and local law does not grant formal policymaking authority to Chief Crum, Plaintiffs argue that the City has informally delegated policymaking authority to him in the areas of hiring, training, supervising, and disciplining officers. They cite several statements by Chief Crum and others suggesting that Chief Crum exercises significant control within the Police Department. At most, however, these statements demonstrate that Chief Crum had the decisionmaking authority to run the day-to-day operations of the Police Department. "[P]olicymaking authority is more than discretion, and it is far more than the final say-so[.]" <u>Bennett v. City of Slidell</u>, 728 F.2d 762, 769 (5th Cir. 1984) (en banc). "Policymakers act in the place of the governing body in the area of their responsibility; they are not supervised except as to the totality of their performance." <u>Id.</u> The record shows that although the City Manager delegated certain duties to the Police Chief, he maintained responsibility for setting policy for the Police Department. Accordingly, the court holds as a matter of law that Chief Crum did not exercise policymaking authority for the City, at least in any respect that would permit [plaintiffs] to recover against

11

the City on the claims at issue in this case. Because plaintiffs have not identified any other potential policymaker who participated in the violations of their constitutional rights, the court holds that the City is not liable under § 1983.[31]

We need not concern ourselves further with the question whether Appellants succeeded in showing that Chief Crum exercised the requisite policymaking authority, because we agree with the district court's alternative analysis, at the completion of which the court concluded that, even if Chief Crum had had policymaking authority, the City would nevertheless not be liable.

As emphasized above, a plaintiff who seeks to impose § 1983 liability on a municipality for a facially lawful action (such as hiring and training police officers) "must demonstrate that the municipal action was taken with '<u>deliberate indifference</u>' as to its known or obvious consequences. <u>A showing of simple or even heightened negligence will not suffice</u>."[32] Instead, this "stringent standard of fault...require[s] proof that a municipal actor disregarded a known or obvious consequence of his action."[33] That is, "[a] plaintiff must demonstrate that a municipal decision reflects <u>deliberate indifference to the risk that a violation</u> of a particular constitutional or statutory right <u>will follow the</u>

---

[31] <u>Gros</u>, 2000 WL 1842421, at *3 (internal citations to the record omitted).

[32] <u>Brown</u>, 520 U.S. at 407 (internal citation omitted) (emphasis added).

[33] <u>Id.</u> at 410.

12

decision."[34]

In the context of assessing Chief Crum's defense of qualified immunity, the district court examined the same hiring and training policies by which Appellants seek to impose municipal liability on the City. With respect to the hiring policy claim, the court observed:

> [Appellants] assert that Chief Crum's hiring policy itself was a repudiation of their constitutional rights because Chief Crum (1) made the decision to hire an officer before the candidate submitted to a psychological examination, (2) never reviewed the results of any candidate's psychological test, (3) never examined a candidate's permanent file in the human resources department, and (4) previously hired two officers who were fired from the Euless Police Department for use of excessive force.
>
> The court holds that Chief Crum is entitled to qualified immunity on these claims because <u>his actions were objectively reasonable</u>. <u>A reasonable person in Chief Crum's position could believe that the preliminary job offer did not violate any constitutional rights</u> because the offer was always conditioned on the candidate's passing a psychological test. <u>It was reasonable for a Chief of Police to delegate to subordinates certain tasks in the hiring process</u>, such as the administration and grading of a psychological test and the examination of a person's work history. <u>Chief Crum's practice of hiring police who were fired for one incident of excessive force is objectively reasonable</u>. See <u>Brown</u>, 520 U.S. at ___, 117 S.Ct. at 1393 (holding that supervisor who hired applicant with one conviction for assault and battery was not liable under § 1983).[35]

From this analysis, the court concluded that it was proper to grant qualified immunity to Chief Crum on Appellants' hiring policy

---

[34] <u>Id.</u> at 411 (emphasis added).

[35] <u>Gros v. City of Grand Prairie, Tex.</u>, 1999 WL 102800, at *3 (Feb. 22, 1999) (internal citations to the record omitted) (emphasis added).

13

claims.

Again in the context of the qualified immunity inquiry, the district court concluded that Chief Crum was entitled to immunity on Appellants' training and supervision claims. First, the court determined that Chief Crum's failure to provide Rogers's immediate supervisors with a copy of the psychologist's report or a summary of Gros's complaint was objectively reasonable, noting that "Chief Crum's failure to provide Officer Rogers' supervisors with these documents <u>did not violate plaintiffs' constitutional rights</u>."[36] With respect to Appellants' contentions that Chief Crum should be liable "because he was aware that GPPD officers were acting inappropriately towards citizens,"[37] the court observed:

> Plaintiffs have failed to identify the particular deficiency in the officers' training programs. Instead, [Appellants] merely assert that GPPD never taught "civil rights" to its officers. <u>This conclusory contention is insufficient, however, to permit a reasonable trier of fact to find that Chief Crum was deliberately indifferent to their constitutional rights</u> through his failure to train Officer Rogers.[38]

It is obvious from the foregoing that the district court concluded that any deficiency in Chief Crum's conduct in connection with the hiring, training, and supervision policies at issue —— most of which the court deemed objectively reasonable —— did not

---

[36] <u>Id.</u> at *4 (emphasis added).

[37] <u>Id.</u> at *6.

[38] <u>Id.</u> (internal citations to the record omitted) (emphasis added).

14

rise to the level of the "stringent standard" of deliberate indifference to Appellants' constitutional rights. Referring to our earlier decision in this case, in which we held that Chief Crum's hiring of Rogers did not constitute deliberate indifference, the district court correctly summed up its analysis of Appellants' municipal liability claims:

> Although the circuit court's decision arose in the context of qualified immunity, it applies equally to the question whether Chief Crum violated plaintiffs' constitutional rights by exhibiting deliberate indifference with regard to the hiring, supervising, training, and disciplining of Officer Rogers. Furthermore, a reasonable jury could not find that Chief Crum's policies regarding the hiring, supervising, training, and disciplining of officers were deliberately indifferent to plaintiffs' constitutional rights. Accordingly, even if Chief Crum is a policymaker for the City, his conduct cannot give rise to municipal liability under § 1983.[39]

We agree with the district court's analysis and conclusion, and affirm its grant of summary judgment to the City.[40]

### 2. Qualified Immunity for Police Chief Crum

As explained above, when the district court addressed Chief

---

[39] Gros, 2000 WL 1842421, at *4.

[40] The district court correctly observed that, "[b]ecause plaintiffs' action against Chief Crum...in [his] official capacit[y] is the same as a suit against the City, the motion, and the court's decision today, also apply to [Chief Crum] in [his] official capacit[y]." (Citing Kentucky v. Graham, 473 U.S. 159, 165-66 (1985)). Our affirmance of the summary judgment in favor of the City therefore has the concomitant effect of affirming the district court's dismissal of the Appellants' claims against Chief Crum and Lieutenant Bender in their official capacities.

Crum's qualified immunity defense, it held that he was entitled to qualified immunity for Appellants' hiring policy and training and supervision policy claims, but was not entitled to qualified immunity for the claims premised on his hiring of Officer Rogers. Chief Crum appealed the denial of qualified immunity, and in April 2000, we reversed that denial, holding that Crum was not deliberately indifferent in connection with his hiring of Rogers. At that time, we declined to address Appellants' cross-appeal of the grant of qualified immunity to Chief Crum on the hiring policy and training and supervision policy claims. We turn now to Appellants' appeal of those two district court rulings.

As a threshold matter, Chief Crum insists that Appellants did not perfect the appeal of the grant of qualified immunity to him because their notice of appeal referenced only the district court's December 2000 Memorandum and Order, the sole focus of which was the City's municipal liability. He argues that the Appellants' notice of appeal is insufficient to revive their interlocutory cross-appeal over which we refused to exercise jurisdiction in April 2000. In October 2001, a panel of this court denied Chief Crum's motion to dismiss Appellants' appeal on precisely the same grounds as he re-urges now. The October ruling implicitly found that Appellants have properly perfected the appeal of the grant of qualified immunity to Chief Crum. Although we are not bound by the

16

motions panel's determinations on such questions,[41] we do agree with that panel's ruling.

The district court's December 2000 memorandum opinion and order disposing of the Appellants' municipal liability claims against the City was referenced in a final judgment entered by district court pursuant to Fed. R. Civ. P 54(b) in January 2001. That judgment states, in relevant part:

> For the reasons set out in a memorandum opinion and order filed December 12, 2000, <u>and the court by prior judgments having dismissed all other claims in this case against all defendants except defendant Eric Rogers</u> ("Rogers"), individually, it is ordered and adjudged that plaintiffs' actions <u>against all defendants</u>, except defendant Rogers, <u>are dismissed with prejudice</u>....
>    Pursuant to Fed. R. Civ. P. 54(b), the court expressly determines that there is no just reason for delay and directs the clerk of court to enter this as a final judgment. [Emphasis added.]

Appellants' notice of appeal, in turn, states:

> Notice is hereby given that [Appellants] hereby appeal to the United States Court of Appeals for the Fifth Circuit from the Memorandum Opinion and Order signed by the Court on December 12, 2000.... Said Order of the Court was made final and appealable by entry of a Rule 54(b) Judgment signed by the Court on January 8, 2001....

It is true that Appellants' notice of appeal refers only to the December 2000 memorandum opinion and order, and not to the February 1999 opinion and order in which the district court granted summary judgment to Chief Crum and Lieutenant Bender based on qualified immunity. We nevertheless conclude, on these facts, that

---

[41] <u>See, e.g.</u>, <u>In re Grand Jury Subpoena</u>, 190 F.3d 375, 378 n.6 (5th Cir. 1999).

Appellants have perfected their appeal of the February 1999 ruling.

In Trust Co. of Louisiana v. N.N.P., Inc.,[42] responding to an argument that an issue had not been preserved for appeal, we observed:

> We have held that where a party designates in the notice of appeal particular orders only (and not the final judgment), we are without jurisdiction to hear the challenges to other rulings or orders not specified in the notice of appeal. But we have not applied this "specify-all-orders" approach to notices of appeal from a final judgment. Rather, we have held that an appeal from a final judgment sufficiently preserves all prior orders intertwined with the final judgment....
> ...
> Moreover, we have also suggested that if a party mistakenly designates the ruling from which he seeks to appeal, the notice of appeal is liberally construed and a jurisdictional defect will not be found if (1) there is a manifest intent to appeal the unmentioned ruling or (2) failure to designate the order does not mislead or prejudice the other party.
> In United States v. Lopez-Escobar, 920 F.2d 1241, 1244-45 (5th Cir. 1991), we stated that if both parties briefed the issue that allegedly was not preserved on appeal — as is the case here — and if the opposing party suffers no prejudice, we have jurisdiction to hear challenges to the unenumerated orders.[43]

The instant case is replete with factors advanced by the Trust Co. court as militating in favor of exercising jurisdiction. First, Appellants did appeal from an order that was designated as a final judgment pursuant to Fed. R. Civ. P. 54(b). Second, despite Chief Crum's argument to the contrary, the issue of his qualified immunity is "intertwined" with the issue of municipal liability in

_____

[42] 104 F.3d 1478 (5th Cir. 1997).

[43] Trust Co., 104 F.3d at 1485-86 (internal citations omitted) (emphasis added).

this case, as the foregoing discussion[44] demonstrates. Third, Appellants certainly did exhibit a "manifest intent to appeal the unmentioned [February 1999] ruling" when they attempted to cross-appeal it to this court at the same time Chief Crum raised his appeal. And, fourth, Chief Crum has suffered no prejudice by Appellants' failure to designate the February 1999 order expressly in their notice of appeal, as is made abundantly clear by both parties' briefing of the issue. We therefore reject Chief Crum's arguments and turn to the merits of Appellants' appeal of the district court's grant of summary judgment to Chief Crum based on qualified immunity.

In its clear and careful opinion, the district court first assured itself that the Appellants had actually stated an appropriate claim against Chief Crum under 42 U.S.C. § 1983. The court described the contours of a proper § 1983 supervisory liability claim as follows:

> A government official cannot be held liable under § 1983 on the basis of respondeat superior. Monell v. Department of Soc. Servs., 436 U.S. 658, 694 n.58 (1978). Instead, he can be held liable only if he was personally involved in the acts causing the deprivation of an individual's constitutional rights, or if there was a causal connection between his wrongful conduct and the constitutional violation sought to be redressed. Thompkins v. Belt, 828 F.2d 298, 304 (5th Cir. 1987); Hinshaw v. Doffer, 785 F.2d 1260, 1263 (5th Cir. 1986). Because Gros and Sikes only allege that Officer Rogers

---

[44] I.e., the district court's examination of Chief Crum's actions for deliberate indifference and objective reasonableness, in the context of municipal liability and qualified immunity, respectively.

directly violated their constitutional rights, the court must determine whether Chief Crum...[is] liable as Officer Rogers' supervisor[].

To succeed on a claim for supervisory liability, a plaintiff must show that (1) the supervisor engaged in wrongful conduct, (2) a causal link exists between this wrongful conduct and the violation of the plaintiff's rights, and (3) the wrongful conduct amounts to deliberate indifference. See Smith v. Brenoettsy, 158 F.3d 908, 911-12 (5th Cir. 1998); see also Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443, 454 n.8 (5th Cir. 1994) (en banc) (stating that deliberate indifference standard applies to all cases alleging a constitutional violation). A supervisor engages in wrongful conduct when he either (1) fails to train or supervise his subordinates or (2) implements a policy so deficient that the policy itself is a repudiation of a citizen's constitutional rights. See Smith, 158 F.3d at 911-12; Baker v. Putnal, 75 F.3d 190, 199 (5th Cir. 1996); Thompkins, 828 F.2d at 304; Mathis v. Cotton, 1997 WL 457514, at *5 (N.D. Tex. Aug. 5, 1997) (Solis, J.). Further, a supervisor acts with "deliberate indifference" when he disregards a known or obvious consequence of his action. Board of the County Comm'rs of Bryan County, Ok. v. Brown, 520 U.S. 397, ___, 117 S.Ct. 1382, 1391 (1997).... For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and also draw the inference. Smith, 158 F.3d at 912 (quoting [Farmer v. Brennan, 511 U.S. 825, 837 (1994)]).[45]

The court concluded that the Appellants stated a § 1983 claim against Chief Crum (1) when they alleged that through various unconstitutional policies and decisions, he was deliberately indifferent to their constitutional rights in improperly hiring Officer Rogers and thereafter in failing adequately to supervise and train him; and (2) when they alleged further that Chief Crum's deliberate indifference caused violations of their constitutional

---

[45] Gros, 1999 WL 102800, at *1 (emphasis added).

20

rights.

Having established that the Appellants had stated a proper §
1983 claim, the court next considered Chief Crum's defense of
qualified immunity, by engaging in the familiar two-pronged
inquiry: (1) Had Appellants alleged the violation of a clearly
established right, and, if so, (2) were Chief Crum's actions
objectively reasonable in light of clearly established law at the
time of the conduct in question.[46]  In considering the first
question, the court concluded that Appellants had alleged the
violation of the clearly established rights to be free from false
arrests, unreasonable searches and seizure, sexual harassment, and
sexual assault, and that Chief Crum's duties regarding those rights
were clearly established at the time of the alleged violations.

The court then considered the second question of the qualified
immunity test, whether Chief Crum's actions were objectively
reasonable in light of clearly established law at the time of the
conduct in question.  We have recounted the substance of that
analysis in our review of the court's ruling on municipal
liability, above.  Our de novo review of the parties' arguments,
the record, and the district court's analysis leads us to affirm
the district court's conclusions that Chief Crum's conduct at the
time of the alleged constitutional violations was objectively
reasonable in light of clearly established law at that time.  Even

---

[46] See Anderson v. Creighton, 483 U.S. 635, 639 (1987).

21

the claim that is perhaps the most compelling —— that Chief Crum had actual knowledge of "unprofessional behavior" of GPPD officers towards citizens, including the use of excessive force, but did nothing to remedy the problem —— received explicit attention by the district court:

> Gros and Sikes contend that Chief Crum is liable because he was aware that GPPD officers were acting inappropriately toward citizens. They point to previous complaints and incidents in which officers verbally and physically abused citizens and used excessive force. Plaintiffs have failed to identify the particular deficiency in the officers' training program. Instead, Gros and Sikes merely assert that GPPD never taught "civil rights" to its officers. This conclusory contention is insufficient, however, to permit a reasonable trier of fact to find that Chief Crum was deliberately indifferent to their constitutional rights through his failure to train officer Rogers. See [City of Canton v. Harris, 489 U.S. 378, 391-92 (1989)] (noting that lesser standard of fault and causation would open defendants to unprecedented liability under § 1983 and would result in de facto respondeat superior liability).[47]

Our de novo review of these issues confirms the correctness of the district court's sound analysis, and compels us to agree that, as to all claims, the district court correctly concluded that Chief Crum's actions were objectively reasonable. We therefore affirm the district court's grant of qualified immunity for the § 1983 supervisory liability claims asserted against him.[48]

_____

[47] Gros, 1999 WL 102800, at *6 (internal citations to the record omitted).

[48] It is not altogether clear whether Appellants have appealed the district court's grant of summary judgment to Lieutenant Bender based on qualified immunity. They do appear to argue, obliquely, that Lieutenant Bender could be held liable for

22

III. Summary

We agree with the district court's alternative analysis and conclusion: Even if Chief Crum were found to be a policymaker for the City, Appellants have failed to show that he acted with the deliberate indifference necessary to impose § 1983 municipal liability on the City. We also agree with the district court's related conclusion that Chief Crum's actions with respect to the hiring, training, and supervision of GPPD officers was objectively reasonable, entitling him to qualified immunity on Appellants' § 1983 supervisory liability claims against him. The district court's grants of summary judgment to the City and to Chief Crum i his supervisory capacity are therefore

AFFIRMED.

---

a violation of their constitutional rights because of his failure properly to investigate Gros's claim against Officer Rogers. We have considered their arguments, and we reach the same conclusion as did the district court on this point: "A reasonable person...could conclude that Lt. Bender and Chief Crum adequately investigated Gros' complaint in light of the clearly established law at the time." Gros, 1999 WL 102800, at *5. We therefore affirm the district court's grant of summary judgment to Lieutenant Bender based on qualified immunity.

23