United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 18, 2006**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

———————

No. 05-30671

———————

YVES GELIN,

Plaintiff-Appellant,

versus

HOUSING AUTHORITY OF NEW ORLEANS,

Defendant-Appellee.

———————————————————————

Appeal from the United States District Court
For the Eastern District of Louisiana

———————————————————————

Before SMITH, GARZA, and OWEN, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Yves Gelin appeals from the district court's grant of summary judgment in favor of the

Housing Authority of New Orleans ("HANO") on his claim for relief under 42 U.S.C. § 1983.

I

HANO is a Louisiana state agency charged with providing safe, affordable housing to

economically disadvantaged citizens in Orleans Parish. Gelin is an attorney who served in various

positions in the HANO office of general counsel. Immediately prior to dismissal, he served as general

counsel—an unclassified, exempt, and at-will position.

In December 2003, Gelin informed his superior, Catherine Lamberg, that he would have to report a purported agency bribe to the Federal Bureau of Investigation ("FBI").[1] He contends that his relationship with Lamberg became strained as a result and that, in February 2004, she terminated his employment while he was on approved sick leave.

Gelin filed suit against HANO in federal district court, asserting claims under 42 U.S.C. § 1983, the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), and state law. He alleged that the agency terminated him for speaking out on a matter of public concern and failed to properly compensate him for the hours he worked.

After Gelin abandoned his FMLA claim, the district court granted HANO's motion for summary judgment on his section 1983 claim, finding (1) no evidence that Lamberg was a final policymaker for employment matters at HANO and (2) no evidence of a causal connection between Gelin's termination and his alleged protected activity. The district court subsequently dismissed his state claim for lack of supplemental jurisdiction. Gelin appeals the grant of summary judgment.

II

We review the district court's grant of summary judgment *de novo*, applying the same legal standard as the district court. *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 600 (5th Cir. 2001). We affirm the judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

---

[1] HANO entered into a settlement agreement with the Desire Area Resident Council. This agreement provided employment to the council's president at an annual salary of $27,000. Gelin testified that he was concerned that this was a bribe and told Lamberg that "if you guys proceed and do this, then you leave me no choice but to go to the FBI."

Under section 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983. A section 1983 claim may be brought against a state or local governing body "where official policy or governmental custom is responsible for a deprivation of rights protected by the Constitution." *Bennett v. Slidell*, 728 F.2d 762, 766 (5th Cir. 1984); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) (holding that the word "person" in section 1983 includes municipalities and other local governing bodies).

Normally, a plaintiff must identify a policy or custom that gave rise to the plaintiff's injury before he may prevail. *Canton v. Harris*, 489 U.S. 378, 389 (1989). It is well-established, however, that a single decision by an official can be grounds for section 1983 liability where the decision was rendered by an individual with "final policy making authority." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989); *see Brady v. Fort Bend County*, 145 F.3d 691, 698 (5th Cir. 1998) (recognizing that a single action by an official with final policymaking authority may constitute official policy).[2]

Where liability is based upon a single decision by an official, "[a] court's task is to 'identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or

---

[2] Although well-established in theory, "isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

statutory violation at issue.' " *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 784-85 (1997) (citation omitted). "[T]he identification of those officials whose decisions represent the official policy of the local governmental unit" is a question of state law "to be resolved by the trial judge *before* the case is submitted to the jury." *Jett*, 491 U.S. at 737. "The sources of state law which should be used to discern which municipal officials possess final policymaking authority are 'state and local positive law, as well as custom or usage having the force of law.' " *Gros v. City of Grand Prairie, Tex.*, 181 F.3d 613, 616 (5th Cir. 1999) (quoting *Jett*, 491 U.S. at 737).

The parties have not identified, through citations to state or local law, the entity or individual with final policymaking authority for HANO personnel matters. They both assume that the HANO Board of Commissioners ("Board") had such policymaking authority, but disagree as to whether the Board delegated that authority to Lamberg. We have remanded in similar cases to allow the parties to fully brief the sources of state law. *See, e.g.*, *Gros*, 181 F.3d at 617. We find remand unnecessary here because the evidence of "custom or usage" provided by the parties—including deposition testimony, personnel manual provisions, and affidavits—establish that Lamberg, at least, did not wield such policymaking authority for the agency.

Lamberg was the administrative receiver responsible for the "day to day operations of HANO."[3] The Board also designated her the "appointing authority," with the power to terminate an employee on the agency's behalf. The evidence indicates that these positions do not have an inherent policymaking function. Although Gelin argues that Lamberg was also, by default, the Executive

---

[3] The Department of Housing and Urban Development ("HUD") began an enhanced administrative receivership after HANO experienced problems administering federally funded projects. HUD appointed Carmen Valenti to serve as the Board and Lamberg to serve as HANO's administrative receiver.

-4-

Director of HANO, there is no record evidence that the Board appointed her Executive Director, nor is there evidence that she exercised the full panoply of executive powers. Rather, the record establishes that three individuals—Nadine Jarmon, Lori Moon, and Lamberg—divided the "various chief executive functions at HANO." Whether Lamberg served as Executive Director is, moreover, wholly irrelevant because the position does not have an inherent policymaking function. Under the HANO policy manual, the Executive Director may establish and modify personnel procedures. However changes to personnel policies require Board approval.[4] Therefore, even if Lamberg operated as Executive Director, she cannot be considered a final policymaking authority simply because she held that position. Lamberg may have wielded decisionmaking authority; her position alone, however, did not bestow any final policymaking authority. *See Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir. 1995) ("When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the decision-maker's departure from them, are the act of the municipality.").[5]

---

[4] The HANO personnel manual's statement of purpose asserts that the Executive Director "shall formulate the policies and procedures contained in this manual . . . ." Gelin argues that this statement indicates that the Executive Director has policymaking authority. This general statement of purpose does not, by itself, overcome the more explicit provision in the manual that requires Board approval of "[a]mendments or additions to personnel policies."

[5] After judgment, the district court denied Gelin's motion for a new trial or to alter the judgment. In that motion, Gelin sought to introduce Valenti's deposition testimony to establish that Lamberg was given final policymaking authority over employment matters. In his brief on appeal, Gelin relies heavily on this testimony to support his argument that "all matters pertaining to personnel, not just terminations, were delegated to Ms. Lamberg. Mr. Valenti, the one man Board of Commissioners, never formulated any policies, nor did he ever overrule any policies formulated or implemented by Ms. Lamberg." Even if Gelin had properly introduced Valenti's testimony into the record, it does not provide Gelin any refuge. That the Board did not formulate new policies or overrule Lamberg is not sufficient evidence to create an issue of material fact regarding an alleged delegation of policymaking authority. Without more, these facts only support the inference that little or no policymaking was done during the period of receivership.

Gelin suggests that, even if the Board did not expressly delegate policymaking authority to Lamberg, she was nevertheless the *de facto* final policymaking authority for termination decisions because her decisions were administratively unreviewable. He contends that the grievance procedure in HANO's policy manual is ineffective because it does not explicitly provide for administrative review of termination decisions and, to the extent it does, "any decision is subject to review by the Executive Director, the same person with decision making authority respective to terminations."

In *Jett v. Dallas Independent School District*, 7 F.3d 1231 (1994), we addressed an argument similar to the one Gelin raises here. In *Jett*, a high school teacher brought a section 1983 action, alleging that he had been involuntarily transferred because of his race and the exercise of his First Amendment rights. He argued that liability should attach because a "policy adopted by the board of trustees made the superintendent the final decisionmaker on an employee's challenge to his or her proposed transfer . . . ." *Id*. at 1246. That policy provided that administrative appeals were "heard at the General Superintendent level, and the General Superintendent shall exercise final jurisdiction." *Id*. at 1246 & n.9. After remand from the Supreme Court, we rejected that argument, reasoning that the Supreme Court in *Pembaur v. Cincinnati*, 475 U.S. 469 (1986) (plurality opinion), and *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988) (plurality opinion), "carefully distinguished between those having mere *decisionmaking* authority and those having *policymaking* authority." *Jett*, 7 F.3d at 1246.[6] We held that the fact that the official "may have been delegated the final decision in the

---

[6] In its plurality opinions in *Pembaur* and *Praprotnik*, the Court articulated guiding principles to address "when a decision on a single occasion may be enough to establish an unconstitutional municipal policy." *Praprotnik*, 485 U.S. at 123. The plurality in *Pembaur* asserted that liability may not rest upon the employment decision of an official who does not have final policymaking authority in that area. 475 U.S. at 483. It defined the contours of its reasoning through a hypothetical.

Thus, for example, the [official] may have discretion to hire and fire

cases of protested individual employee transfers does not mean that he had or had been delegated the

> employees without also being the . . . official responsible for establishing . . . employment policy. If this were the case, the [official's] decisions respecting employment would not give rise to municipal liability, although similar decisions . . . over which the [official] *is* the official policymaker, *would* give rise to municipal liability. Instead, if [the] employment policy was set by the Board . . . , only that body's decisions would provide a basis for . . . liability. This would be true even if the Board left the [official] discretion to hire and fire employees and the [official] exercised that discretion in an unconstitutional manner; the decision to act unlawfully would not be a decision of the Board. However, if the Board delegated its power to establish final employment policy to the [official], the . . . decisions *would* represent . . . policy and could give rise to municipal liability.

*Pembaur*, 475 U.S. at 484 & n.12. The Supreme Court again addressed this issue in its plurality opinion in *Praprotnik*. In *Praprotnik*, the plurality suggested that appointing authorities were not final policymakers simply because their decisions were not individually reviewed or were reviewed under a deferential standard of review. 485 U.S. at 129.

> Simply going along with discretionary decisions made by one's subordinates, however, is not a delegation to them of the authority to make policy. It is equally consistent with a presumption that the subordinates are faithfully attempting to comply with the policies that are supposed to guide them. It would be a different matter if a particular decision by a subordinate was cast in the form of a policy statement and expressly approved by the supervising policymaker. It would also be a different matter if a series of decisions by a subordinate official manifested a "custom or usage" of which the supervisor must have been aware. In both those cases, the supervisor could realistically be deemed to have adopted a policy that happened to have been formulated or initiated by a lower-ranking official. *But the mere failure to investigate the basis of a subordinate's discretionary decisions does not amount to a delegation of policymaking authority*, especially where (as here) the wrongfulness of the subordinate's decision arises from a retaliatory motive or other unstated rationale. In such circumstances, the purposes of § 1983 would not be served by treating a subordinate employee's decision as if it were a reflection of municipal policy.

*Id*. at 130 (internal citation omitted) (emphasis added).

status of policymaker, much less final policymaker, respecting employee transfers." *Id*. In so doing, we specifically noted that "*Praprotnik* expressly rejected the concept of '*de facto* final policymaking authority,'" *id*. at 1247, and cited with approval the Seventh Circuit's decision in *Auriemma v. Rice*, which stated: "That a particular agent is the apex of a bureaucracy makes the decision 'final' but does not forge a link between 'finality' and 'policy.'" 957 F.2d 397, 400 (7th Cir. 1992).

Although our decision in *Jett* eschews the importance of administrative reviewability in distinguishing final decisionmaking authority from final policymaking authority, we have found the existence of effective administrative review to be relevant in certain contexts. *See Beattie*, 254 F.3d at 603 (noting the importance of reviewability and citing cases); *Brady*, 145 F.3d at 700 (stating that a sheriff is a final policymaker where his exercise of discretion was "unreviewable by any other official or governmental body in the county"); *Worsham v. City of Pasadena*, 881 F.2d 1336, 1340 (5th Cir. 1989) ("[I]f an official's actions are subject to review procedures, there has not been a complete delegation of power to terminate city employees so as to create municipal liability under *Pembaur*."); *id*. at 1341 ("The existence of effective review procedures prevents the employees from wielding final responsibility . . . .").[7] We need not address any apparent disharmony in our cases because we hold that Gelin's termination decision was subject to review.

As an initial matter, Gelin's own testimony contradicts his argument that Lamberg was the

---

[7] *See Lytle v. Carl*, 382 F.3d 978, 984 (9th Cir. 2004) (indicating that a decisionmaker is a final policymaker where the board of trustees explicitly delegates "full authority over employee discipline" without retaining "the authority to review such discipline"); *Scala v. City of Winter Park*, 116 F.3d 1396, 1398-99 (11th Cir. 1997) (holding that a city manager was not a final policymaker with respect to employment termination decisions where those decisions were reviewable by a civil service board); *Mandel v. Doe*, 888 F.2d 783, 792-94 (11th Cir. 1989) (noting that where decisions "are not subject to review," discretionary review initiated by the municipal official himself does not prevent the official from being a final policymaker).

sole and final decisionmaker for employment decisions. He testified that one other individual could overrule Lamberg's decisions to hire and fire department heads.[8] In addition, he testified that, although Lamberg offered to rehire him, Valenti and Moon made the decision not to do so.[9]

Aside from the various individuals who could apparently overrule Lamberg's decision, HANO also had a three-phase grievance procedure that allowed an employee to request and obtain a hearing by the Executive Director or a three-person committee. There is no record evidence indicating that the committee process was merely a rubber stamp for the decisions of the appointing authority. Furthermore, as discussed *supra*, there is no evidence that Lamberg was the Executive Director. Finally, although Gelin asserts that the terms of the grievance procedure do not explicitly apply to disputed termination decisions, there is no record evidence to dispute HANO's assertion that Gelin could have pursued an appeal.

### III

---

[8]    Q: And, in fact, it was [Lamberg's] role as administrative receiver of HANO to make the hiring and firing decisions regarding department heads; isn't that right?
Gelin: That is correct.
Q: So that would not have been something that – over which Dr. Moon had authority?
Gelin: Oh, yes. She did.
Q: Oh, she did?
Gelin: Yes. She did.
Q: She could overrule Ms. Lamberg?
Gelin: Oh, yes.

[9]    Gelin: As I said, after Ms. Lamberg offered me my job back, and we were in negotiations for me to come back to work, and Ms. Lamberg left, then it was brought to my attention that, it was no longer Ms. Lamberg firing me, it was Dr. Moon and Carmen Valenti.
Q: This was after you had already been discharged?
Gelin: After I had already been discharged.

We hold that the Board did not delegate final policymaking authority to Lamberg and reject Gelin's alternative argument that she was the *de facto* policymaker in this area.[10] Accordingly, we AFFIRM the district court's order granting summary judgment.

---

[10] Because we hold that Lamberg was not a final policymaker, we need not address whether there was evidence that Gelin's discharge was causally related to his alleged protected activity.