United States Court of Appeals
Fifth Circuit

**F I L E D**

February 26, 2007

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-11151

_____

KAREN JO BARROW,

                              Plaintiff-Appellant,

                     versus

GREENVILLE INDEPENDENT SCHOOL DISTRICT; ET AL,

                              Defendants,

GREENVILLE INDEPENDENT SCHOOL DISTRICT,

                              Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:00-CV-913

_____

Before JOLLY, HIGGINBOTHAM, and DENNIS, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

     The district court held that the superintendent of defendant
Greenville Independent School District did not act as a policymaker
for the district in refusing to recommend a teacher for promotion.
Under Texas law, a school district's board of trustees can hire or
promote only persons recommended by the superintendent.  Yet the
Board has the power to hire and fire the superintendent.
Concluding that under Texas law the Board retains the ultimate
policymaking authority for hiring and promotion, we affirm.

Karen Jo Barrow was a teacher in the Greenville Independent School District. When the Assistant Principal position at Greenville Middle School became available, the future principal of the middle school encouraged Barrow to apply. Barrow was interested in and qualified for the position.

At the direction of Dr. Herman Smith, superintendent of GISD, a senior school official asked Barrow if she would move her children from a private Christian school to public school so that Barrow could be considered for the job. Barrow affirmed her interest in the job but stated she wouldn't sacrifice her childrens' religious education.

After Barrow's name was placed in the pool of applicants, Dr. Smith directed Assistant Superintendent for personnel, William Smith, to see if Barrow would be willing to move her children to public school. She was not, and another person was hired for the job. Later, Smith told Barrow and her husband that he didn't recommend Karen Jo for the job because her children went to private school; he also stated that Barrow had "no future" at GISD while that was the case.[1]

Barrow sued Smith and GISD in federal district court under § 1983, claiming a denial of constitutional rights, disparate impact and treatment in violation of Title VII, and several violations of

---

[1] GISD disputes many of these facts, but on a motion for summary judgment we resolve disputed facts in favor of the non-moving party, here Barrow.

state law.  GISD moved for summary judgment, which the court granted in part and denied in part.  Regarding § 1983, the court concluded that the GISD Board of Trustees, not Smith, was the policymaker because Smith only recommended candidates while the Board had final approval.  The district court also held that the circumstance that the Board rubber-stamped Smith's recommendations was legally irrelevant and that a patronage requirement was not custom or practice establishing GISD policy.  It denied summary judgment, however, finding that Barrow sufficiently alleged that GISD actually knew of Smith's behavior, knowledge it concluded was sufficient to establish GISD policy if proved.[2]  The court granted summary judgment for GISD on the Title VII claims, except as to Barrow's reasonable accommodation claim,[3] concluding that the failure to promote was due to Barrow's choice to put her children in private school, not because of her religion or the religious nature of the private school she chose, and that Barrow presented no evidence of disparate impact upon constitutionally protected conduct.  The court denied summary judgment on the state law claims, except as to the claim for injunctive relief.

The remaining claims were tried to a jury, which found against

---

[2] *See Bennett v. City of Slidell*, 728 F.2d 762 (5th Cir. 1984).

[3] GISD failed to move for summary judgment as to that claim.

3

Smith[4] and for GISD, ordering Smith to pay Barrow about $35,000 in damages and $650,000 in fees and costs. All parties filed post-judgment motions, which the court denied. Barrow appeals the court's grant of summary judgment to GISD, contending that Superintendent Smith was a policymaker. She asks that we reverse and render judgment in her favor and against GISD given the jury finding that Smith violated her rights.[5] She also appeals the summary judgment granted to GISD on the Title VII claim of disparate impact.

## II

A school district has no vicarious liability under § 1983. Rather, it is liable for the unconstitutional conduct of its policymakers, including persons to whom it has delegated policymaking authority in certain areas.[6] We review *de novo* the district court's conclusion that Smith was not such a policymaker here.[7]

We have examined before the policymaking authority of

---

[4] Early in the case, the district court granted summary judgment for Smith after concluding he had qualified immunity. Barrow appealed. GISD filed its motion for summary judgment, and the court ruled on the motion during Barrow's appeal. We reversed the court's grant to Smith of qualified immunity, *see Barrow v. Greenville Indep. Sch. Dist.*, 332 F.3d 844 (5th Cir. 2003), hence Smith re-entered the case and was a defendant at the trial of Barrow's remaining claims.

[5] In a footnote, GISD states that it does not concede a violation of Barrow's rights, but it makes no argument to the contrary. Because we affirm that Smith was not a policymaker, we do not address the argument.

[6] *See Monnell v. Dep't of Soc. Servs.*, 436 U.S. 658, 689 (1978).

[7] *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 376 (5th Cir. 2002).

4

superintendents of independent school districts in Texas. In *Jett v. Dallas ISD*,[8] a school principal recommended to the superintendent, who had final approval over the matter under ISD policy, that a teacher/coach be transferred. The superintendent approved and ordered the transfer, unaware of the principal's discriminatory motive. The Board played no role. The teacher sued the principal and the ISD, but not the superintendent, arguing that his involuntary transfer was motivated by race and his exercise of First Amendment rights. A jury awarded damages against the principal and the ISD. We reversed the judgment against the ISD for want of a finding that the superintendent had policymaking authority for his relevant conduct.[9] The Supreme Court granted certiorari to decide another issue, ultimately remanding for a determination of whether, under Texas law, the superintendent had "final policymaking authority in the area of employee transfers."[10]

The panel determined that, under Texas law, school boards make

---

[8] 7 F.3d 1241 (5th Cir. 1993).

[9] Jett never argued that the principal was a policymaker.

[10] The Supreme Court left the question to us:

We decline to resolve this issue on the record before us. We think the Court of Appeals, whose expertise in interpreting Texas law is greater than our own, is in a better position to determine whether [the superintendent] possessed final policymaking authority in the area of employee transfers, and *if so* whether a new trial is required to determine the responsibility of the school district for the actions of Principal Todd in light of this determination"""" We remand the case to the Court of Appeals for *it* to determine where final policymaking authority as to employee transfers lay in light of the principles enunciated by the plurality opinion in *Praprotnik* and outlined above...(emphasis added).

7 F.3d at 1244 (*citing Jett v. Dallas ISD,* 491 U.S. 701, 738 (1989)).

5

policy and superintendents administer.  It pointed to Texas law giving the school board "*exclusive* authority to manage and govern the public free schools of the district,"[11] concluding that the superintendent's power to decide transfers was entirely delegated by the board, hence the board had authority to modify or eliminate that power, rendering it the policymaker.[12]

Here, however, a Texas statute directs ISDs to adopt a personnel policy giving superintendents "sole authority to make recommendations to the board regarding the selection of all personnel, except that the board may delegate final authority for those decisions to the superintendent....If the board rejects the superintendent's recommendation, the superintendent shall make alternative recommendations until the board accepts a recommendation."[13]  Hence the superintendent's power to *recommend* comes from the legislature, not from the board of trustees, although the board retains the power to accept or reject those recommendations and to fire the superintendent.  Barrow argues that this structure gives policymaking authority over personnel

---

[11] TEX. EDUC. CODE § 23.26 (repealed and reenacted as amended in 1999 as § 11.051) (emphasis added).

[12] The court also stated that "[n]othing in the Texas Education Code purports to give the Superintendent any policymaking authority or power to make rules or regulations, whether as to...transfers *or otherwise*" (emphasis added). Because the statutory question here is different from that in *Jett*, and because the situation in *Jett* did not require a ruling on the policymaking authority of superintendents in all instances, this statement does not dictate the result here.

[13] TEX. EDUC. CODE § 11.163(a)-(b).

decisions to both the Board and Smith because both must agree on candidates - and both have effective veto power over the other's candidates.[14]

Standing alone, Barrow's argument has purchase because the superintendent has "sole authority" to recommend. But it cannot prevail against the backdrop of Texas's legislative scheme, which generally makes the board the policymaker and the superintendent the head administrator. Texas's system of bifurcating recommendation and approval authority over hiring and promotion neither gives the superintendent policymaking authority nor abrogates the board's general policymaking authority. Accenting this point in the matter of selecting school principals, the Texas legislature insists that the "board of trustees...shall adopt a policy for the selection of a campus principal that includes qualifications required for that position."[15] By its structure it is evident that the bifurcated system was calculated to insulate

---

[14] Barrow makes three other, meritless arguments which are conflated with her primary, strong argument. First, she argues that GISD's rubber-stamping of Smith's recommendations renders him the *de facto* policymaker. The district court properly rejected this argument because the question is whether GISD had the *authority* to guide Smith's discretion, not whether it actually did so. *See Jett*, 7 F.3d at 1247 n.10 (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 129 (1988)). Second, she argues that GISD has a "custom and usage" of requiring teachers to put their children in public school. The district court rejected this argument for lack of evidence, and Barrow didn't appeal the ruling and does not now explain what sufficient evidence supports the claim. Third, Barrow briefly asserts that GISD is a policymaker for failing, to this day, to adopt a policy forbidding the superintendent from using the unlawful patronage practice. This turns *Monnell* on its head. Although there is the argument that the absence of a policy may be actionable where the absence was intended by the municipality to avoid liability, *see Cornfield v. Consol. High Sch. Dist.*, 991 F.2d 1316, 1326 (7th Cir. 1993), there's no evidence of such intent here.

[15] TEX. EDUC. CODE § 11.202©).

routine personnel decisions from direct meddling by elected board members, channeling board influence in such matters into the board's decision to hire or fire a superintendent and into its power to set standards for positions. The legislature accomplished this balance of its objectives by insisting that the board hire only persons recommended by a superintendent, whom it hires and fires. So fashioned, the legislation did not erode the policymaking authority of the board; it reinforced it, albeit with procedural traces for its exercise.

The statutory structure avoids the awkward scene of a superintendent advancing an unconstitutional personnel policy that the board has explicitly disavowed, leaving the board to protest liability for a policy that it has denounced. We need not search for evidence of such a risk of dueling, binding policies. There is a strong suggestion here that, to the extent there was a Board policy, it opposed patronage.[16] That escape from such a scene is offered by the power of the board to fire the superintendent highlights that it is the board, not the superintendent, which has policymaking authority.

This statutory structure is cemented by caselaw. As *Jett* emphasized, an official whose discretionary decisions on a

---

[16] The Board had informally discussed and rejected a patronage policy during a public budget meeting. Moreover, the Board had a general anti-discrimination policy which mirrored broad constitutional requirements (e.g., no discrimination based on race, religion, or national origin), although it didn't explicitly mention the right at issue here.

8

particular matter are final and unreviewable,[17] meaning they can't be overturned, is constrained if another entity has ultimate power to guide that discretion, at least prescriptively, whether or not that power is exercised.[18] In *Auriemma v. Rice*,[19] cited by *Jett*, the Seventh Circuit concluded that the Chicago Police Chief, who by city ordinance had unreviewable discretion to make personnel decisions, would not have set city policy in allegedly discriminating by race. Rather, the Chief would have *violated* city policy, embodied in another city council ordinance generally forbidding racial discrimination in hiring.

We AFFIRM the district court's grant of summary judgment to GISD on Barrow's § 1983 claim.

III

The district court granted summary judgment to GISD on Barrow's claim that the patronage policy operated more harshly on people patronizing private school for religious belief than people opting for private schooling for other reasons. The court explained:

---

[17] This court in *Beattie v. Madison County School District*, 254 F.3d 595, 603 (5th Cir. 2001), characterized *Jett* as holding that "a superintendent's transfer of a teacher to another position might be a final policy decision if that action was unreviewable, even if the superintendent did not have complete control over the hiring and firing of district personnel." "Might be" does not mean "is," and a person is not a policymaker when he makes a decision simply because that decision is unreviewable.

[18] *See Jett*, 7 F.3d at 1247.

[19] 957 F.2d 397 (7th Cir. 1992).

> To establish a prima facie case of disparate impact, Barrow must show that facially neutral employment standards operate more harshly on one group than another. This initial burden includes proof of a specific practice or set of practices resulting in a significant disparity between the groups. Statistical disparities between the relevant groups are not sufficient. A plaintiff must offer evidence 'isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities.'

> Barrow has not furnished evidence of any observed statistical disparities caused by GISD's [alleged practice]. At most, she has adduced evidence that this requirement was applied to her twice, and to Pope once. In response, GISD has introduced evidence that while employed by GISD, Assistant Superintendent Mike Cardwell...educated his children for twelve years in [the same school as Barrow's children], and during that time was promoted to Assistant Superintendent....Taken as a whole, the evidence on which Barrow relies does not satisfy her initial burden of proving that GISD's employment practices have resulted in a significant disparity between Christian and non-Christians, or religious believers and non-believers.

The record evidence, read in the light most favorable to Barrow, supports the district court's conclusion that Smith did not recommend Barrow because her children were not attending the public schools, not because her children were attending a religious school. There is no probative evidence that Smith's decision had any impact upon any First Amendment-protected freedom.[20]

We AFFIRM the district court's grant of summary judgment to GISD on the Title VII disparate impact claim.

AFFIRMED.

---

[20] She also argues that GISD did not, in its motion for summary judgment, argue anything about lack of evidence of disparate impact. That is wrong; in any event, we can affirm the district court's independent conclusion based on the record.

10