IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 7, 2008

Charles R. Fulbruge III
Clerk

No. 07-10999

TERRELL BOLTON

Plaintiff - Appellant

v.

CITY OF DALLAS TEXAS; CITY MANAGER TEODORO BENAVIDES, In
His Official Capacity

Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas
(04-CV-501)

Before JOLLY, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:[*]

After a remand from this court, Terrell Bolton, former police chief of the
City of Dallas, Texas, again appeals from the district court's ruling and
judgment that the City of Dallas is not liable, under 42 U.S.C. § 1983, for his
termination by Ted Benavides, the Dallas city manager. Because we agree that,
even though Benavides was the final decisionmaker, his actions in this respect
were not the policy of the City and, as a result, the City is not liable for his

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

termination of Bolton, we AFFIRM. We also DENY the respective motions of the parties as moot.

I.

In August 2003, Terrell Bolton was terminated as the Chief of Police of Dallas by Ted Benavides. Bolton filed a 42 U.S.C. § 1983 suit against both Benavides and the City of Dallas, alleging that his due process rights under the Fourteenth Amendment to the United States Constitution had been violated by the termination. Bolton admitted that Benavides had the authority to remove Bolton from his position as Chief of Police but argued that Benavides did not have the authority to terminate him from the police department. Bolton relied on Chapter XII, § 5, of the Dallas City Charter ("the Charter"):

> If the chief of the police department . . . was selected to that position from the ranks of the police department and is removed from the position on account of unfitness for the discharge of the duties of the position, and not for any cause justifying dismissal from the service, the chief . . . shall be restored to the rank and grade held prior to appointment to the position, or reduced to a lower appointive rank.

Bolton initially lost his suit in district court on summary judgment; the district court found that Bolton, as Chief of Police, had no property interest in further employment by the City and therefore could not prevail on a due process claim.

A panel of this court disagreed and held that the Charter did give Bolton a property interest "in continued employment at the rank and grade held before his appointment to the executive position." Bolton v. City of Dallas, 472 F.3d 261, 264 (5th Cir. 2006). The panel also concluded, however, that Benavides was entitled to qualified immunity in his individual capacity because the precedent governing the case, Muncy v. City of Dallas, 335 F.3d 394 (5th Cir. 2003), did not clearly proscribe Benavides's termination of Bolton. Bolton, 472 F.3d at 266. The panel therefore dismissed Bolton's claims against Benavides in his

2

individual capacity and remanded the case for determination of further liability, if any. Id.

## II.

Back in the district court, Benavides and the City once again moved for summary judgment. The district court granted the motion. The district court held that the only remaining claim against Benavides was in his official capacity, and therefore Bolton's suit contested only the liability of the City. It further held that the City of Dallas could not be held responsible for Benavides's actions because Benavides had frustrated the policy of the City by terminating Bolton in violation of Chapter XII, § 5, of the Charter. Bolton filed a motion for reconsideration that included several arguments not initially raised before the district court. The judge denied this motion. Bolton appealed both the grant of summary judgment in favor of Dallas and the denial of his motion for reconsideration.

## III.

On appeal, Bolton argues that the discretion that Benavides had to terminate personnel makes him a policymaker for the City with respect to the employment action here. Accordingly, the City is liable for Benavides's termination of Bolton. Dallas responds that, although Benavides did have discretion to make employment decisions without the direct oversight of the city council, the policies of the City are reflected in the Charter; acts contrary to the Charter cannot be imputed to the City.[1]

---

[1] As we noted above, Bolton also appealed from the district court's denial of his motion for reconsideration. The district court refused to consider new evidence and arguments that Bolton presented in that motion and accordingly denied it. Bolton has included some of that evidence in his brief, prompting Dallas to file a motion to strike those portions of Bolton's brief. Bolton does not, however, make any attempt in his brief to argue that the district court made an error in the denial of the motion for reconsideration. Instead, Bolton addresses the motion for reconsideration only in his response to the City's motion to strike. "We deem abandoned those issues not raised in an appellant's initial brief and we will not consider those issues not raised in the trial court." United States v. Ragsdale, 426 F.3d 765, 785 n.9 (5th Cir. 2005).

IV.

A.

We review the district court's grant of summary judgment de novo. Cousin v. Small, 325 F.3d 627, 637 (5th Cir. 2003). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact." FED. R. CIV. P. 56(c). "On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Coury v. Moss, 529 F.3d 579, 584 (5th Cir. 2008).

B.

Municipal liability for civil rights violations under § 1983 is based on causation rather than respondeat superior. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978). The fact that a tortfeasor is an employee or an agent of a municipality is therefore not sufficient for city liability to attach; the municipality must cause the constitutional tort, which occurs "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Id. at 694.

Bolton does not argue that the City has a written policy or unwritten custom that has caused him constitutional harm. Instead, he argues that the single decision and act of Benavides in terminating him constitutes the policy of the City. It is well-established that a single unconstitutional action by a municipal actor may give rise to municipal liability if that actor is a final policymaker. Woodard v. Andrus, 419 F.3d 348, 352 (5th Cir. 2005).

---

Moreover, the district court plainly acted within its discretion in refusing to consider the new evidence—Bolton's argument that the district court's summary judgment was sua sponte and that he therefore had no notice that the evidence was relevant is contradicted by the record. See Templet v. HydroChem Inc., 367 F.3d 473, 479 (5th Cir. 2004). In any case, we DENY the City's motion to strike—and Bolton's motion for leave to file a sur-reply—as moot.

Accordingly, this "court's task is to 'identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.'" McMillian v. Monroe County, 520 U.S. 781, 784–85 (1997) (quoting Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989)). This inquiry is specific to the particular action at issue, see id. at 785, and depends on an analysis of relevant state and local law, see Jett, 491 U.S. at 737.[2]

Our analysis must also take into account the difference between final decisionmaking authority and final policymaking authority, a distinction that this circuit recognized as fundamental in Jett v. Dallas Independent School District, 7 F.3d 1241, 1247 (5th Cir. 1993). The distinction between final decisionmaker and final policymaker has its origin in two Supreme Court plurality opinions, Pembaur v. City of Cincinnati, 475 U.S. 469 (1986), and City of St. Louis v. Praprotnik, 485 U.S. 112 (1988). Both opinions concluded that discretion to exercise a particular function does not necessarily entail final policymaking authority over that function.[3] Pembaur, 475 U.S. at 483–84;

---

[2] "[C]ustom or usage having the force of law" may also be consulted, Jett, 491 U.S. at 737 (internal quotation marks omitted), but Bolton does not base his arguments on these sources.

[3] In a footnote, the Pembaur Court illustrated this distinction:

> [F]or example, the County Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy. If this were the case, the Sheriff's decisions respecting employment would not give rise to municipal liability, although similar decisions with respect to law enforcement practices, over which the Sheriff is the official policymaker, would give rise to municipal liability. Instead, if county employment policy was set by the Board of County Commissioners, only that body's decisions would provide a basis for county liability. This would be true even if the Board left the Sheriff discretion to hire and fire employees and the Sheriff exercised that discretion in an unconstitutional manner; the decision to act unlawfully would not be a decision of the Board.

Praprotnik, 485 U.S. at 130. In Jett, we understood the decisionmaking addressed in Pembaur and Praprotnik to include decisions that were "final." 7 F.3d at 1247. We noted that neither of the Supreme Court cases made a "suggestion of any qualification such as 'initial' discretion or the decisionmaker's action being subject to appeal or the like." Id. at 1247–48. And, moreover, Praprotnik states that "[w]hen an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality." Praprotnik, 485 U.S. at 127. We held that this statement "applies even to individual decisions which are not reviewable." Jett, 7 F.3d at 1248. Thus, Jett "eschews the importance of administrative reviewability in distinguishing final decisionmaking authority from final policymaking authority." Gelin v. Hous. Auth. of New Orleans, 456 F.3d 525, 530 (5th Cir. 2006).

In Jett, we also recognized support for this position in a Seventh Circuit case, Auriemma v. Rice, 957 F.2d 397 (7th Cir. 1992), and in this circuit's own precedents. See Jett, 7 F.3d at 1248. In Auriemma, the Seventh Circuit assumed that the Chicago Superintendent of Police had final, executive authority to demote police officers. Auriemma, 957 F.2d at 399. But it nevertheless held that such authority could not support municipal liability:

> If it were enough to point to the agent whose act was the final one in a particular case, we would have vicarious liability. Action in the course of one's duty is the basis of vicarious liability. That a particular agent

---

> However, if the Board delegated its power to establish final employment policy to the Sheriff, the Sheriff's decisions would represent county policy and could give rise to municipal liability.

475 U.S. at 483 n.12. And, as we noted in Jett, 7 F.3d at 1247, this example was revisited in Praprotnik as a basis for its distinction between a final policymaker and a final decisionmaker. 485 U.S. at 129–30.

> is the apex of a bureaucracy makes the decision "final"
> but does not forge a link between "finality" and "policy".

Id. at 400. And in this circuit, "[w]e took essentially the same approach . . . where 'we rejected the line of authority . . . which would permit policy or custom to be attributed to the city itself by attribution to any and all officers endowed with final or supervisory power or authority.'" Jett, 7 F.3d at 1248 (quoting Bennett v. City of Slidell, 735 F.2d 861, 862 (5th Cir. 1984) (en banc) (per curiam)) (second alteration in original). The finality of an official's action does not therefore automatically lend it the character of a policy.[4] See id. at 1246; Barrow v. Greenville Indep. Sch. Dist., 480 F.3d 377, 382 n.17 (5th Cir. 2007).

Here, where Dallas has a city council and a city manager, the state and local law show that the city manager is an executive and administrative official

---

[4] Gelin does note that "we have found the existence of effective administrative review to be relevant in certain contexts." 456 F.3d at 530. The cases cited by Gelin generally confirm that review procedures can be relevant to showing that an official is not a final policymaker. See, e.g., Beattie v. Madison County Sch. Dist., 254 F.3d 595, 603 (5th Cir. 2001) (holding that a superintendent was not a final policymaker because her decision was subject to review by the school board); Worsham v. City of Pasadena, 881 F.2d 1336, 1341 (5th Cir. 1989) ("The existence of effective review procedures prevents the employees from wielding final responsibility in the instant case."). Further, we have since explicitly understood Beattie to otherwise follow Jett. See Barrow v. Greenville Indep. Sch. Dist., 480 F.3d 377, 382 n.17 ("This court in [Beattie] characterized Jett as holding that 'a superintendent's transfer of a teacher to another position might be a final policy decision if that action was unreviewable, even if the superintendent did not have complete control over the hiring and firing of district personnel.' 'Might be' does not mean 'is,' and a person is not a policymaker when he makes a decision simply because that decision is unreviewable." (quoting Beattie, 254 F.3d at 603)).

Gelin also cites, and Bolton relies on, Brady v. Fort Bend County, 145 F.3d 691 (5th Cir. 1998), one of a number of cases in which we addressed the liability of a Texas county for the actions of its sheriff. But Brady, and another case in this line cited by Bolton, Bennett v. Pippin, 74 F.3d 578 (5th Cir. 1996), depend on a premise not present here: the special place accorded by state statute to Texas sheriffs as the ultimate repository of legal authority in a given county "not by virtue of delegation by the county's governing body but, rather, by virtue of the office to which the sheriff has been elected." Turner v. Upton County, 915 F.2d 133, 136 (5th Cir. 1990); see also Brady, 145 F.3d at 699–701; Bennett, 74 F.3d at 586. Thus, Texas sheriffs are policymakers as a direct result of state statute; their constitutional violations result in county liability even if contrary to other state law or policy. Bennett, 74 F.3d at 586. No such statute is present here.

with final decisionmaking authority in certain employment decisions; it does not show that the Charter or the city council delegated policymaking power to the city manager. Nor can Bolton otherwise build a case that Benavides had such power in this instance. Bolton first cites state law:

> (a) The city manager shall administer the municipal business and the governing body of the municipality shall ensure that the administration is efficient.
>
> (b) The governing body by ordinance may delegate to the city manager any additional powers or duties the governing body considers proper for the efficient administration of municipal affairs.
>
> (c) The city manager must execute a bond. The bond must be conditioned that the manager will faithfully perform the duties of manager and must be in an amount prescribed by ordinance.

TEXAS LOCAL GOV'T CODE ANN. § 25.029. The repeated references to the city manager's responsibility for "administration" make clear that the position is executive rather than legislative; that is, state law alone does not give to city managers "the responsibility for making law or setting policy in any given area of a local government's business." Praprotnik, 485 U.S. at 125. State law instead reserves that role for the "governing body."

Nor does the local law that Bolton cites delegate to Dallas's city manager policymaking authority with respect to the employment decision here. The Charter does give a broad degree of discretion to the city manager in the city manager's removal and appointment of employees, and it further prohibits the city council from "dictat[ing]" the city manager's decisions in that regard. Bolton depends on this discretion—and its coordinate lack of review—to demonstrate that Benavides is a final policymaker. But, as we discussed above, neither complete discretionary authority nor the unreviewability of such authority

automatically results in municipal liability.[5]  There must be more.  And Bolton points to no other relevant source of law showing that the City vested Bolton with policymaking power.

Further, Chapter XII, § 5, of the Charter—the relevant local law quoted earlier—prohibits the specific action taken by Benavides.  Thus, absent some contrary custom not shown here, Benavides's action clearly does not represent final policy with respect to the removal of city officials like Bolton.  It is the Charter that announces the City's policy in this regard.  See Barrow, 480 F.3d at 382  ("[A]n official whose discretionary decisions on a particular matter are final and unreviewable, meaning they can't be overturned, is constrained if another entity has ultimate power to guide that discretion, at least prescriptively, whether or not that power is exercised." (footnotes omitted)); Auriemma, 957 F.2d at 400 ("Liability for unauthorized acts is personal; to hold the municipality liable, Monell tells us, the agent's action must implement rather than frustrate the government's policy."); Praprotnik, 485 U.S. at 127.  There is no argument that Benavides was generally free to disregard the Charter,[6] or that the City had a custom of permitting such disregard.  And Bolton has not shown that Benavides was vested with policymaking authority

---

[5] Bolton cites Neubauer v. City of McAllen, 766 F.2d 1567, 1573–74 (5th Cir. 1985), overruled on other grounds by Walther v. Lone Star Gas Co., 952 F.2d 119 (5th Cir. 1992), for the proposition that a city manager with final discretion to make employment decisions is necessarily a final policymaker.  But we have not understood Neubauer to announce such a broad rule or to be inconsistent with Pembaur.  See Jett v. Dallas Indep. Sch. Dist., 798 F.2d 748, 759 (5th Cir. 1986), aff'd in part and remanded in part on other grounds, 491 U.S. 701 (1989).  And the Charter here imposes limitations on the city manager not present in Neubauer.  See 766 F.2d at 1573–74.

[6] Bolton makes an ill-defined argument that the City did assert in earlier litigation that Benavides was free to disregard Chapter XII, § 5, of the Charter and that its statements in this respect should now be held against the City lest the integrity of the courts be compromised.  Bolton calls these statements "judicial admissions," although his argument also has the characteristics of a request for estoppel.  In any case, it is evident that the City's position now is a direct consequence of our earlier ruling in Bolton's favor.  We find no reason to prevent the City from advancing such an argument in this case.

such that municipal liability should attach despite the existence of a contrary city policy.  See Bennett, 74 F.3d at 586.  Benavides was therefore not the final policymaker with respect to his decision to terminate Bolton and municipal liability cannot attach to that decision.

V.

Because state and local law demonstrate that Ted Benavides was not a final policymaker with respect to his decision to terminate the employment of Terrell Bolton, the City of Dallas cannot be held liable for that termination. Accordingly, the district court's grant of summary judgment in favor of Dallas is AFFIRMED.  The motions before us are DENIED as moot.