# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 8, 2021

Lyle W. Cayce
Clerk

No. 20-40211

Patricia Hernandez Edelstein; Erin Hernandez Garcia;
Maria Linda Gonzalez; Sonia Herrera;
Aida Montanaro-Flores; Rebecca RuBane;
Elizabeth Valdez Garza,

*Plaintiffs—Appellants,*

*versus*

City of Brownsville,

*Defendant—Appellee.*

Appeal from the United States District Court
for the Southern District of Texas
No. 1:19-CV-42

Before Jones, Smith, and Elrod, *Circuit Judges.*
Jerry E. Smith, *Circuit Judge*:*

Seven female attorneys sued the City of Brownsville under 42 U.S.C. § 1983. They claimed that the City had violated the Due Process Clause of the Fourteenth Amendment by failing to publicize three openings for the

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

position of Municipal Judge. They also contended that the City had violated the Equal Protection Clause by engaging in sex discrimination during the hiring process for those positions. The district court dismissed Plaintiffs' complaint for failure to state a claim and denied their motion to amend it. We affirm.

I.

Brownsville is the seat of Cameron County, Texas. Its government consists of a City Commission comprising a Mayor and six Commissioners. *See* BROWNSVILLE, TEX., CODE OF ORDINANCES ("BROWNSVILLE CODE") pt. I, art. V, § 1 (2021), https://library.municode.com/tx/-brownsville/codes/code_of_ordinances. Those officials appoint a City Manager to be "the chief executive officer and head of the administrative branch of the city government." *Id.* pt. I, art. V, § 20. In return, the Manager is "responsible to the city commission for the proper administration of all affairs of the city in his charge." *Id.* One of his powers is control over appointments. The City's charter vests him with the authority to hire and fire all its officers and employees, save only those positions for which it makes a specific exception. *Id.*; *see also id.* (specifying that the Commission, not the Manager, appoints the city attorney). Importantly, the charter also prohibits the Commission or its members from "in any manner dictat[ing] the appointment or removal" of the officers and employees that the Manager is empowered to hire and fire. *Id.* By ordinance, the City's leaders have confirmed that Municipal Judgeships are one such position. *See id.* subpt. A, ch. 66, § 66–6(a).

Plaintiffs are seven female attorneys who reside in Cameron County, Texas. All hoped to become Municipal Judges for the City and had asked it to notify them when vacancies for that position arose. Although there were three such openings in August 2018, the City did not post them online or

notify the Plaintiffs about them.  Two months later, Plaintiffs discovered that the vacancies had been filled with three men.  According to Plaintiffs, the Commissioners did not want women to be hired as Municipal Judges and had instructed the Manager to consider only men for the openings.

In response, Plaintiffs brought two claims against the City.[1]  First, they alleged that the City had violated the Due Process Clause of the Fourteenth Amendment and 42 U.S.C. § 1983 by infringing their substantive interest in "furthering [their] careers in the legal field."  Second, they alleged that the City had violated the Equal Protection Clause and 42 U.S.C. §§ 1983 and 1988 by engaging in sex discrimination during the Municipal Judge hiring process.

The City then moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  The district court granted its motion.  On the substantive Due Process claim, it held that "Plaintiffs' allegations amount to asserting a liberty interest to be considered for a specific job opportunity" and that no such right existed.  On the Equal Protection claim, it held that Plaintiffs had failed to state a claim for municipal liability because they did not allege that the City's final policymaker for Municipal Judge hiring—the Manager—intended to discriminate against them.  Even so, it observed that their allegations "resemble the 'cat's paw' or 'rubber stamp' legal theory that the Fifth Circuit has recognized in Title VII claims."  It then encouraged Plaintiffs to move to amend their complaint to pursue that theory if they believed it applied to Section 1983 claims.

Subsequently, Plaintiffs moved to amend their complaint.  As the dis-

---

[1] Initially, Plaintiffs also brought a claim under 42 U.S.C. § 1985 for conspiracy to interfere with civil rights,  but they voluntarily withdrew it in response to the City's motion to dismiss.

trict court had suggested, their proposed amended complaint advanced a cat's paw theory of liability. It also included additional details supporting their allegations of sex discrimination by the Commissioners. The district court, however, denied their motion as futile. First, it observed that Plaintiffs "offer[ed] no argument in their Motion to support the application of the cat's paw theory of liability to their causes of action." It also noted that this court had not previously applied that theory in the context of Section 1983. Accordingly, it declined to employ the theory in this case. Second, the district court held that Plaintiffs' additional allegations "d[id] not cure the legal deficiencies in Plaintiffs' claims that led the Court to find those causes of action untenable and subject to dismissal." Plaintiffs appealed.

## II.

We review *de novo* the district court's dismissal of Plaintiffs' complaint under Rule 12(b)(6). *White v. U.S. Corr., L.L.C.*, 996 F.3d 302, 306 (5th Cir. 2021). To overcome a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). During our review, we "accept all well-pled facts as true" and "constru[e] all reasonable inferences in the complaint in the light most favorable to the plaintiff." *White*, 996 F.3d at 306–07. Even so, "we do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* at 307 (quoting *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020)).

We also review *de novo* the denial of Plaintiffs' motion to amend their complaint on the grounds of futility. *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016). Such a motion is futile when "the amended complaint would [still] fail to state a claim upon which relief could be granted." *Id.* Accordingly, we "treat the denial of a motion to amend on

such basis as we treat a dismissal under Federal Rule of Civil Procedure 12(b)(6)." *Id.*

### III.

### A.

The district court properly dismissed Plaintiffs' substantive Due Process claim. They allege that the City infringed their substantive life and liberty interests in furthering their legal careers by denying them a "proper hiring process" for the Municipal Judge positions. The district court held that the Fourteenth Amendment "does not encompass such an expansive liberty interest." We agree. That Amendment protects the right to "choose one's field of private employment . . . subject to reasonable government regulation." *Conn v. Gabbert*, 526 U.S. 286, 291–92 (1999). Plaintiffs, however, do not allege they have been excluded from the legal profession. Instead, in the district court's words, their "allegations amount to asserting a liberty interest to be considered for a specific job opportunity." We have previously held that the Due Process Clause does not protect the mere "expectation" of an opportunity to pursue a certain profession. *Neuwirth v. La. State Bd. of Dentistry*, 845 F.2d 553, 557 (5th Cir. 1988). As Plaintiffs' asserted interest is even more sweeping, we affirm the dismissal of their claim.[2]

### B.

Likewise, the district court correctly dismissed Plaintiffs' equal protection claim. They allege that the Commissioners violated their rights under the Equal Protection Clause by forbidding the Manager from hiring women as Municipal Judges. On appeal, they argue we can impute this discrimination—and therefore liability—to the City under Section 1983 because the

---

[2] Because Plaintiffs have no such interest, their failure-to-train and failure-to-supervise claims based on this theory were also properly dismissed.

Commissioners are the relevant policymakers for hiring Municipal Judges. The district court, however, treated the Manager as the relevant policymaker. Because Plaintiffs did not allege that the Manager intended to discriminate against them, it held they had not stated a claim for municipal liability. We agree.

For their equal protection claim to survive at this stage, Plaintiffs "must allege and prove that [they] received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Priester v. Lowndes Cnty.*, 354 F.3d 414, 424 (5th Cir. 2004) (quoting *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001) (per curiam)). But since they seek to hold a municipality instead of an individual liable for a constitutional violation, Plaintiffs face an additional requirement. They must also plead that their injury "was caused by an existing, unconstitutional municipal policy, *which . . . can be attributed to a municipal policymaker*." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion) (emphasis added).

To determine whether an official is the relevant "policymaker," we must ascertain whether he "possesses final authority to establish municipal authority *with respect to the action ordered*." *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 602 (5th Cir. 2001) (emphasis added) (quoting *Brady v. Fort Bend Cnty.*, 145 F.3d 691, 698 (5th Cir. 1998)). That's a "question of state law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988) (plurality opinion). And "a federal court would not be justified in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it." *Id.* at 126. As a result, the critical issue for this claim is whether the City's law vests final authority to hire Municipal Judges in the Commissioners or the Manager. If the latter, Plaintiffs' claim was properly dismissed.

No. 20-40211

Here, the City's charter is unambiguous:  The final policymaker for hiring Municipal Judges is the Manager—not the Commissioners.  The charter explicitly vests the Manager with "the power to appoint and remove all officers and employees in the administrative service of the city" unless it provides otherwise.  BROWNSVILLE CODE pt. I, art. V, § 20.  Where the charter makes an exception and vests appointments power in the Commissioners, it is explicit.  *See, e.g., id.* (noting that the "city attorney . . . shall be appointed and removed by the city commission").  The absence of an exception for Municipal Judges is thus strong evidence that the power to appoint them remains with the Manager.  *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 107 (2012) ("The expression of one thing implies the exclusion of the others.").  This reading of the charter is confirmed by an ordinance that states the Manager, not the Commissioner, controls the hiring of Municipal Judges.  BROWNSVILLE CODE subpt. A, ch. 66, § 66–6(a).

The City's charter also makes clear that the Commissioners do not enjoy the power to review the Manager's hiring decisions.  It explicitly forbids them from "dictat[ing] the appointment or removal of any city administrative officers or employees whom the city manager or any of his subordinates are empowered to appoint."  *Id.* pt. I, art. V, § 20.  Thus, although the Commissioners may "fully and freely discuss" their views on hiring with the Manager, they lack the power to overrule his decisions.  *Id.*  A policymaker is often the person whose authority on an issue is "unreviewable by any other body."  *Beattie*, 254 F.3d at 603.  The law that governs this case therefore places final policymaking authority for hiring Municipal Judges in the Manager, not the Commissioners.

Plaintiffs offer two theories why the final policymakers are the City Commissioners instead.  Both have been foreclosed by our precedents.

No. 20-40211

First, Plaintiffs appear to argue that the Commissioners' general over-sight over the Manager makes them the final policymakers on hiring. It is true that the Manager is "responsible to the city commission for the proper administration of all affairs of the city in his charge." BROWNSVILLE CODE pt. I, art. V, § 20. We have previously held, however, that "[t]he mere existence of oversight . . . is not enough" to make an official a final policy-maker. *Beattie*, 254 F.3d at 603. Instead, that official's oversight must relate to "the precise action" at issue in the litigation. *Id*. Here, because the Com-missioners are forbidden from "dictat[ing] the appointment" of Municipal Judges "in any manner," they cannot overturn the precise action of the Man-ager's hiring decisions. BROWNSVILLE CODE pt. I, art. V, § 20. Their general authority over the Manager thus does not make them policymakers *vis-à-vis* those hiring decisions. Plaintiffs' oversight theory fails.

Second, Plaintiffs appear to argue that the Commissioners are the final policymakers here because the Manager complied with their instructions to hire only men. But according to our caselaw, it is the *formal* allocation of power—not the way power is exercised "in practice"—that matters for municipal liability under Section 1983. *Advanced Tech. Bldg. Sols., L.L.C. v. City of Jackson*, 817 F.3d 163, 168 (5th Cir. 2016); *see also Barrow v. Greenville Indep. Sch. Dist.*, 480 F.3d 377, 381 n.14 (5th Cir. 2007) ("[T]he question is whether [the supervisory entity] had the *authority* to guide [the subordi-nate's] discretion, not whether it actually did so."). Analyzing the issue any differently would disregard the Supreme Court's instructions to "respect the decisions, embodied in state and local law, that allocate policymaking author-ity among particular individuals and bodies." *Praprotnik*, 485 U.S. at 131. It would also permit municipalities to be held liable under Section 1983 on what would operate in practice as a *respondeat superior* theory—something the Supreme Court has repeatedly forbidden. *See, e.g.*, *id*. at 126. Hence, both the Supreme Court and our court "have explicitly rejected the concept of *de*

8

*facto* authority" like the one advanced in this case. *Advanced Tech.*, 817 F.3d at 168; *Praprotnik*, 485 U.S. at 131. That means that the City's final policy-maker is still the Manager, even if the Commissioners exercised "personal sway" over him. *Advanced Tech.*, 817 F.3d at 168. Plaintiffs' command theory thus fails, and the district court therefore properly dismissed their Equal Protection claim.[3]

## IV.

Finally, the district court correctly denied Plaintiffs' motion to amend their complaint. It concluded that permitting them to do so would be futile. We agree.

The district court correctly held that Plaintiffs' additional factual allegations would not help them state a claim on any of their earlier theories. In their proposed amended complaint, Plaintiffs claim several times that the Manager intended to discriminate against them in the Municipal Judge hiring process.[4] But the first two of these allegations are conclusory. And common sense leads us to discredit the third, for Plaintiffs themselves admit that mul-

---

[3] Plaintiffs failed to argue that the Commissioners threatened to fire the Manager unless he complied with their instructions. Therefore, we do not address whether non-policymakers' discriminatory intent could be imputed to a municipality if they exercised coercion over a final policymaker.

[4] *See* ROA.151 ("Both the CITY and City Manager purposely discriminated against women . . . ."); ROA.151 ("[T]he City Manager would never recommend the hiring of a female . . . ."); ROA.151–52 ("Discriminatory intent by the City Manager . . . is clear, in that no female, with the exception of one, has held one of these positions in over thirty years."). Plaintiffs appear to argue something similar in their reply brief, at 5 ("When the City Manager's job is to . . . properly see that the enforcement of the personnel policy is adhered to [sic] how can one plausibly conclude he does not possess discriminatory intent based upon his overt actions and inactions[?]"). Insofar as it is different from their allegations in their proposed amended complaint, however, "we ordinarily disregard arguments raised for the first time in a reply brief." *Sahara Health Care, Inc. v. Azar*, 975 F.3d 523, 528 n.5 (5th Cir. 2020).

tiple people have served as Manager over the past thirty years. The core of their allegations is still that the Commissioners directed the Manager to hire three men and that he subsequently carried out those instructions. Those allegations are as consistent with the theory that the Manager is an unwitting participant as they are with the theory that he possessed discriminatory intent. This means their complaint "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). The district court therefore correctly denied Plaintiffs' motion to amend their complaint.

AFFIRMED.

No. 20-40211

JENNIFER WALKER ELROD, *Circuit Judge*, dissenting in part and concurring in part:[1]

Because I believe that allowing plaintiffs' proposed amended complaint would not be futile, I dissent in part. Specifically, the proposed amended complaint states a plausible claim under the Equal Protection Clause by alleging that a municipal policymaker, the City Manager, intentionally discriminated against plaintiffs on the basis of their sex and that plaintiffs suffered unequal treatment as a result. *See Priester v. Lowndes Cnty.*, 354 F.3d 414, 424 (5th Cir. 2004); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion).

The majority opinion correctly concludes that the policymaker for the hiring of Municipal Judges is the City Manager and that plaintiffs plausibly pleaded unequal treatment. But the majority opinion errs by determining that plaintiffs failed to plead discriminatory intent. In their proposed amended complaint, plaintiffs allege that "the City Manager purposely discriminated against women . . . ." and that "the City Manager would never recommend the hiring of a female . . . ." Plaintiffs also alleged that the City Manager never responded to their inquiries about the Municipal Judge positions and never considered hiring anyone other than the three men that were selected. Plaintiffs also allege that discriminatory intent is "clear" in that only one woman has been selected as a Municipal Judge in "over thirty

---

[1] I agree with the majority opinion's rejection of plaintiffs' substantive due process claim. I also agree with the district court's rejection of plaintiffs' cat's paw argument. Under the cat's paw theory of liability, "a subordinate employee's discriminatory remarks regarding a co-worker can be attributed to the workplace superior, ultimately the one in charge of making employment decisions, when it is shown that the subordinate influenced the superior's decision or thought process." *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 366 n.11 (5th Cir. 2013). That theory of liability is inapplicable here because plaintiffs did not plead that the City Manager influences the hiring decisions of the Commissioners. If anything, they attempted to plead the opposite.

years." Discriminatory intent "implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979). Discriminatory intent is simply intent to discriminate. In determining whether discriminatory intent is present in a given case, we conduct a "practical" inquiry examining "objective factors" to surmise "the give and take of the situation." *Id.* at 279 n.24 (quoting *Cramer v. United States*, 325 U.S. 1, 33 (1945)).

Conducting the practical inquiry here and viewing the complaint as a whole, plaintiffs' proposed amended complaint states a viable claim of sex discrimination under the Equal Protection Clause. I respectfully dissent.